[No. 19822-3-II.   Division Two.   October 31, 1997.]

DARRELL E. LEE, ET AL., *Respondents*, v. H.E. "GENE" FERRYMAN, *Appellant*.

*Douglass A. North* of *Maltman, Reed, North, Ahrens & Malnati, P.S.*; and *Ernest L. Nicholson* of *Weber, Gunn, Nicholson, Nordeen, Marshack, Gonzales & Roe, P.S.*, for appellant.

*Darrell E. Lee* of *Lee & Associates*, for respondents.

MADSEN, J.* — This case arises out of a breach of contract action between two co-equal stockholders of The New Portland Meadows, Inc. (TNPM), an Oregon corporation which operates the Portland horse racing track. The Clark County Superior Court granted summary judgment in favor of Plaintiff, Darrell Lee, holding that Defendant, Gene Ferryman, had activated the buy-out provisions of the company's "Stock Purchase Agreement." As a result, the trial court granted specific performance to Lee, compelling Ferryman to sell his stock in TNPM to Lee. Ferryman appeals this ruling and argues that a prior determination made by the Multnomah County Circuit Court of Oregon barred relitigation of this issue on collateral estoppel grounds. We agree and reverse the trial court's grant of summary judgment.

---

*Justice Madsen is serving as a judge pro tempore of the Court of Appeals, Division II, pursuant to CAR 21(c).

## FACTS

Darrell Lee acquired The New Portland Meadows, Inc. in 1991. While in the midst of financial troubles, Lee solicited the assistance of H.E. "Gene" Ferryman by requesting a loan in the amount of $250,000. Ferryman agreed to the loan and at the same time purchased an option to buy 50 percent of the total stock in TNPM. This option was subsequently exercised and Ferryman and Lee became co-equal stockholders of the race track.

The agreement between Lee and Ferryman is embodied in two final written and signed documents executed in the fall of 1992, "The Amended Agreement Between Shareholders" (Amended Agreement) and "The Stock Purchase Agreement" (SPA). The Amended Agreement provides that Lee is to be President of TNPM and Ferryman is to be Vice-President and Secretary/Treasurer. The second agreement, the SPA, sets forth a number of exigencies which would allow a buy-out of one of the parties pursuant to the terms of the agreement. Most importantly, in the case of a unilaterally declared deadlock in the management of TNPM, the defecting party has the option to demand in writing that he be bought out by the other shareholder. As Section Three of the SPA states:

> Should there ever arise a situation in which the shareholders are deadlocked in the management of the affairs of the company and they are unable to resolve the deadlock, then either party may demand in writing of the other shareholder that he acquire the shares of stock of the demander.

Clerk's Papers at 210.

The initial optimism both parties shared in creating a profitable business venture began to fade as the fiscal status of TNPM rapidly declined. In the course of this financial downturn, litigation between the parties ensued. Two separate suits are relevant to this appeal: (1) the action filed by Ferryman in the Multnomah County Circuit Court of Oregon; and (2) the instant case filed by Lee in

Clark County Washington. Because the procedural history of these cases is long, only those details relevant to this appeal will be mentioned.

(1) Multnomah County Circuit Court

On April 7, 1993, Ferryman filed suit against Lee and TNPM in the Multnomah County Circuit Court of Oregon. In the complaint, Ferryman alleged that Lee had mismanaged the corporate assets of TNPM and that irreparable injury to TNPM was imminent because a deadlock existed between Ferryman and Lee. Ferryman sought appointment of a custodian to manage the affairs of TNPM, dissolution of the corporation, and an equitable distribution of the corporation's assets. In the alternative, he sought a decree removing Lee as a director of TNPM and barring his election to the TNPM Board for two years. In his answer, Lee asserted, by way of affirmative defense and counterclaim, that Ferryman had triggered the buy-out provision of the SPA. On October 4, 1993, Lee moved for summary judgment on this counterclaim. This motion was denied by an order of November 19, 1993. Immediately thereafter, Lee voluntarily withdrew his counterclaims against Ferryman and a dismissal was entered.

After several modifications Ferryman submitted his third amended and supplemental complaint, which sought: (1) an order dissolving TNPM or alternatively a ruling allowing TNPM or Ferryman to acquire Lee's stock; (2) a decree permanently barring Lee from TNPM's Board; (3) a declaratory judgment that Ferryman was not required to vote for Lee as President of TNPM; (4) a declaratory judgment that Ferryman had not breached the SPA as claimed by Lee; and (5) attorney fees and costs. On April 14, 1995, Ferryman filed a motion for partial summary judgment on the fourth claim for relief. After a memorandum of law and affidavits were submitted by Lee, the Oregon court granted Ferryman's summary judgment motion. An order was signed on May 30, 1995, and entered on June 5, 1995. This order was embodied in a final Oregon

Rule of Civil Procedure (ORCP) 67B[1] summary judgment entered on July 10, 1995, which explicitly stated that Ferryman had not triggered the buy-out provision of the SPA by declaring a deadlock and refusing to implement the provisions of the Agreement.

Lee appealed the judgments of the Multnomah County Circuit Court, which have been affirmed without opinion by the Oregon Court of Appeals.

(2) Clark County Superior Court

Two days after Gene Ferryman's filing in Oregon, on April 9, 1993, Darrell Lee, with TNPM as a coplaintiff, initiated the present action in the Clark County Superior Court. Lee's initial complaint sought monetary damages for the alleged misappropriation of TNPM corporate funds by Ferryman.[2] After the initial complaint, this action remained dormant until November 8, 1994, when Lee filed an amended complaint, dismissing TNPM as a plaintiff and substituting Vicki Lee, Lee's wife. Additionally, the new complaint alleged that Ferryman triggered the buy-out provision of the SPA by filing a lawsuit against Lee in Oregon. Lee alleged that the filing of suit constituted a written demand by Ferryman that he be bought out under the terms of the SPA, and Lee sought specific performance compelling Ferryman to sell his TNPM shares.

On March 14, 1995, the Lees filed a motion for partial summary judgment on the question of whether Ferryman had triggered the buy-out provision of the SPA. A hearing was held on April 11, 1995, at which time the court took

---

[1]Oregon Rules of Civil Procedure, Rule 67B provides: "**B. Judgment for Less Than All Claims or Parties in Action.** When more than one claim for relief is presented in an action, . . . the court may direct the entry of a final judgment as to one or more but fewer than all the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." 1 OR. REV. STAT.

[2]There was a dispute over $220,000 in corporate funds which the Oregon Racing Commission found Lee had diverted from the use of other entitities, including the state of Oregon and horsemen association(s). Lee contends that Ferryman, not he, is responsible for the financial impropriety.

the motion under advisement. On June 2, 1995, the trial court orally granted the Lees' motion for summary judgment. In an order entered on August 4, 1995, the court found that Ferryman had triggered the buy-out provision of the SPA by filing a lawsuit against Darrell Lee and TNPM in the Multnomah County Circuit Court of Oregon (CP 826). Ferryman appeals this ruling.

## ANALYSIS

■ This is an appeal from a grant of summary judgment in favor of Lee. In such cases an appellate court engages in the same inquiry as the trial court. Ferryman, the nonmoving party, is entitled to have all facts and reasonable inferences therefrom viewed in the light most favorable to him. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 556, 852 P.2d 295 (1993); *Scott v. Pacific W. Mt. Resort*, 119 Wn.2d 484, 487, 834 P.2d 6 (1992). Lee, as the moving party, has the burden of demonstrating that there are no genuine issues of material fact and he is entitled to judgment as a matter of law. *Hartley v. State*, 103 Wn.2d 768, 698 P.2d 77 (1985). Questions of law are reviewed de novo. *Hanson*, 121 Wn.2d at 556.

## FULL FAITH AND CREDIT

Ferryman argues that pursuant to article IV, section 1 of the U.S. Constitution, the Full Faith and Credit Clause, the Clark County Superior Court is bound to give collateral estoppel effect to the final judgment of the Multnomah County Circuit Court of Oregon. Article IV, section 1 provides:

> Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.

U.S. CONST. art. IV, § 1. This constitutional provision has been codified by both Congress, 28 U.S.C. § 1738, and the Washington Legislature, RCW 6.36.025.

██ The Full Faith and Credit Clause requires that "[a] judgment rendered by a court of one state, if valid, is entitled to recognition in the courts of another state by virtue of the full faith and credit clause." *Effert v. Kalup*, 45 Wn. App. 12, 14, 723 P.2d 541 (1986); *see also Riley v. New York Trust Co.*, 315 U.S. 343, 349, 62 S. Ct. 608, 86 L. Ed. 885 (1942); 47 AM. JUR. 2D *Judgments* § 1218 (1969). "If the foreign court had jurisdiction of the parties and of the subject matter, and the foreign judgment is therefore valid where it was rendered, a court of this state must give full faith and credit to the foreign judgment and regard the issues thereby adjudged to be precluded in a Washington proceeding." *In re Wagner*, 50 Wn. App 162, 166, 748 P.2d 639 (1987). Moreover, enforcement of a valid sister state judgment may not be denied, even if the claim upon which the judgment was based could not have been entertained in a Washington court. *See Roche v. McDonald*, 275 U.S. 449, 48 S. Ct. 142, 72 L. Ed. 365, 53 A.L.R. 1141 (1928), *rev'g* 136 Wash. 322, 239 P. 1015, 44 A.L.R. 444 (1925). In effect, the Full Faith and Credit Clause compels an end to litigation. When a state court, having jurisdiction of the parties and subject matter, renders a final judgment, that judgment controls in other states to the same extent as it does in the state where rendered. *Riley*, 315 U.S. at 349.

Lee does not dispute the jurisdiction of the Multnomah County Circuit Court, nor does he dispute that the Oregon judgment was rendered prior to the grant of summary judgment in Clark County. Thus, the final judgment of the Multnomah County Circuit Court must be treated in the same manner as a judgment of the superior court of this state. RCW 6.36.025.[3]

## COLLATERAL ESTOPPEL

██ Ferryman argues that the doctrine of collateral

---

[3]RCW 6.36.025 provides that a foreign judgment, properly filed, "has the same effect and is subject to the same procedures, defenses, set offs, counterclaims, cross-complaints, vacating, or staying as a judgment of a superior court of this state and may be enforced or satisfied in like manner."

estoppel bars relitigation of the issues relating to the buy-out provisions of the SPA. Collateral estoppel, referred to as issue preclusion, "prevents relitigation of an issue after the party estopped has had a full and fair opportunity to present its case. The purpose of the doctrine is to promote the policy of ending disputes, to promote judicial economy and to prevent harassment of and inconvenience to litigants." *Hanson*, 121 Wn.2d at 561 (footnotes omitted); *Malland v. Department of Retirement Sys.*, 103 Wn.2d 484, 489, 694 P.2d 16 (1985); *Beagles v. Seattle-First Nat'l Bank*, 25 Wn. App. 925, 929, 610 P.2d 962 (1980). The Washington Supreme Court has identified four requirements that must be met for the doctrine to apply: (1) the issue decided in the prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted must be a party or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice, *Id.; Malland*, 103 Wn.2d at 489; *Rains v. State*, 100 Wn.2d 660, 665, 674 P.2d 165 (1983).

The first requirement is met in this case because the determinative issue, whether Ferryman had triggered the buy-out provision of the SPA by filing suit against Lee in Oregon, is identical in both the Oregon and Washington judgments. On May 30, 1995, the Multnomah County Circuit Court granted Ferryman's motion for partial summary judgment. The judgment was entered on June 5, 1995, and is embodied in a final ORCP 67B summary judgment which was entered on July 10, 1995, and states in part:

It is hereby ordered and adjudged that Plaintiff [Gene Ferryman] has not triggered the buy-out provisions of Section Three of the Stock Purchase Agreement by declaring a deadlock.

On June 2, 1995, the Clark County Superior Court orally granted Lee's motion for summary judgment. The final or-

der on summary judgment was entered on August 4, 1995, and held that Ferryman had triggered the buy-out provision of the SPA and that filing of the Oregon suit constituted a written demand to be bought out.

■ The second requirement is also satisfied because a grant of summary judgment in favor of Ferryman in the Oregon action constitutes a final judgment on the merits and has the same preclusive effect as a full trial of the issue. *Bunce Rental Inc. v. Clark Equip. Co.*, 42 Wn. App. 644, 648, 713 P.2d 128 (1986). *See also Creed Taylor, Inc. v. CBS, Inc.*, 718 F. Supp. 1171, 1177 (S.D.N.Y. 1989). As one court noted, "[i]t would be strange indeed if a summary judgment could not have collateral estoppel effect. This would reduce the utility of this modern device to zero." *Exhibitors Poster Exch., Inc. v. National Screen Serv. Corp.*, 421 F.2d 1313, 1319 (5th Cir. 1970). "[A] more positive adjudication is hard to imagine." *Id.*

■ ■ The Lees strongly argue that the third requirement, that of being a party or in privity with a party of the prior litigation, is not met in this case. Although admitting that Lee was a party to the Oregon action, the Lees argue that the Oregon judgment affects Mrs. Lee's community property interest in TNPM and that as a result the judgment should be denied collateral estoppel effect in Washington since Mrs. Lee was not a named party to the Oregon action. We find this argument unpersuasive.[4]

Mrs. Lee's interest in TNPM derives from her marriage to Darrell Lee. *See* RCW 26.16.030. She holds no management authority in TNPM and is not a party to the SPA. The Amended Agreement Between Shareholders identifies the corporate titles of the two Directors of TNPM, Darrell Lee and Gene Ferryman:

C. Ferryman agrees that, as a Director of the corporation, he

---

[4]We note that Mr. Lee presented this same argument in a direct appeal of the Oregon action, which was affirmed without opinion by the Oregon Court of Appeals.

will nominate, and vote for, Lee as President. Lee agrees, that, as a Director of the corporation, he will nominate, and vote for, Ferryman as Vice President and Secretary/Treasurer.

In addition, the SPA identifies Darrell Lee and Gene Ferryman as the sole stockholders in TNPM:

THIS STOCK PURCHASE AGREEMENT is between DARRELL E. LEE AND H.E. (GENE) FERRYMAN both of whom are hereinafter referred to as "shareholders." The New Portland Meadows, Inc. herein referred to as "company" is also a party to this agreement.

## RECITALS

A. Shareholders are the sole stockholders of The New Portland Meadows, Inc., a corporation organized and existing under the laws of the State of Oregon.

By virtue of Washington's community property laws Mrs. Lee does have an ownership interest in TNPM. *See* RCW 26.16.030. However, as President of the corporation, Lee had express management authority over that interest. Mrs. Lee's sole involvement in the SPA was her signed spousal consent to sell:

### Spouse's Consent

I acknowledge that I have read the foregoing agreement and that I know its contents. I am aware that by its provisions my spouse agrees to sell all his shares of TNPM Inc., including my interest in them, on the occurrence of certain events. I hereby consent to the sale, approve of the provisions herein, and agree that those shares and my interest in them are subject to the provisions of this agreement. I will take no action at any time to hinder the operation of the agreement on those shares and my interest in them.

Mrs. Lee thus voluntarily subjected her community interest in TNPM to the provisions of the SPA.

Under these circumstances, Mrs. Lee was not a neces-

sary party to the Oregon declaratory judgment action. OREGON REVISED STATUTE 28.110 states:

> When declaratory relief is sought, all person shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

"Interest" under ORS 28.110 refers specifically to an interest in the subject matter of the dispute. *City of Salem v. Oregon-Washington Water Serv. Co.*, 144 Or. 93, 23 P.2d 539 (1933). The Oregon Supreme Court has stated:

> It is our belief that the word "interest" refers to the *subject-matter of the controversy*, and that the requirement is satisfied when the plaintiff has brought before the court those who are participants therein.

*City of Salem*, 23 P.2d at 543 (emphasis added).

The SPA was the subject matter of the Oregon declaratory judgment action. Lee, Ferryman, and TNPM were the three parties to the SPA and all were joined in the Oregon case. Mrs. Lee does have a financial interest in TNPM; but even if this were a sufficient "interest" under ORS 28.110 to require her joinder, it is an interest that is subject to the conditions of the SPA per her "spousal consent to sell." As such, under Oregon law any declaratory judgment regarding the SPA could be entered in her absence because she did not have a sufficient "interest" under ORS 28.110 to require that she be made a party to the Oregon suit.[5]

The Lees also argue that Mrs. Lee was a necessary party pursuant to RCW 26.16.030, which lists six circumstances where consent of both spouses is required in order to enforce a transaction involving community property. Specifically, he cites section 6, which provides:

> (6) Neither spouse shall acquire, purchase, sell, convey, or

---

[5]At oral argument Mr. Lee himself conceded that under Oregon law Mrs. Lee was not a necessary party.

encumber the assets, including real estate, or the good will of a business where both spouses participate in its management without the consent of the other: **PROVIDED**, That where only one spouse participates in such management the participating spouse may, in the ordinary course of such business, acquire, purchase, sell, convey or encumber the assets, including real estate, or the good will of the business without the consent of the nonparticipating spouse.

RCW 26.16.030(6).

Lee argues that the SPA is a contract to acquire all of Ferryman's interest in TNPM or to divest the Lees' interest in TNPM. Accordingly, litigation concerning the SPA pertains to the sale or purchase of a business which, he argues, falls outside the ordinary course of business.

This argument also fails. Assuming that the SPA can be characterized as an agreement to buy or sell stock, Mrs. Lee agreed in her spousal consent to any transaction involving TNPM stock made pursuant to the SPA. Thus, RCW 26.16.030 presents no impediment to enforcement of the Oregon judgment.

■ The fourth final requirement of collateral estoppel is that its application not work an injustice. Injustice in this context has been defined as whether an individual in the prior suit was afforded a full and fair hearing. *Barr v. Day*, 69 Wn. App 833, 854 P.2d 642 (1993). The Lees contend that in the Oregon action Lee was not afforded this basic requirement, but the record does not corroborate this assertion.

The Lees contend that it was improper for the Oregon trial court to recommend to Ferryman during a conversation on April 5, 1995, that he file a summary judgment motion. What the Lees fail to acknowledge is that Lee was granted a hearing on the motion and presented affidavits and a memorandum of law prior to the court's grant of summary judgment, which occurred on May 30, 1995, almost two months after the initial suggestion of the court.

Furthermore, the court was asked to decide precisely

the same issue Lee had brought forth earlier in the Oregon action, an issue that the Oregon court was keenly aware of and prepared to rule upon. By the time the Oregon court entered its ruling granting Ferryman's summary judgment motion, the court had dealt with the issue of whether Ferryman triggered the buy-out provision of the SPA on two prior occasions: (1) Lee originally asserted this claim as an affirmative defense to Ferryman's original Oregon complaint, which was denied, and (2) Lee had brought a counterclaim in the Oregon action claiming that Ferryman had triggered the buy-out provision of the SPA and requesting an order compelling Ferryman to sell his shares to Lee. Lee moved for summary judgment on this claim, and after the presentation of evidence it was denied by Multnomah County Circuit Court.

## CONCLUSION

The Multnomah County Circuit Court of Oregon made a final determination that Ferryman had not triggered the buy-out provision of the SPA prior to the antithetical ruling of the Clark County Superior Court. The Full Faith and Credit Clause of the U.S. Constitution requires that judgment be given effect in Washington. Applying principles of collateral estoppel, we hold that the Lees are estopped from arguing that Ferryman's filing of the Oregon suit constituted a written demand to be bought out under the terms of the SPA. The Clark County Superior Court's grant of summary judgment is reversed.

ARMSTRONG and HUNT, JJ., concur.

Review denied at 135 Wn.2d 1006 (1998).