[No. 25223-6-II. Division Two. March 23, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. GARY GUS GIMARELLI, *Appellant*.

*John A. Hays*, for appellant (appointed counsel for appeal).

*Jeremy Randolph, Prosecuting Attorney*, for respondent.

HOUGHTON, J. — Gary Gimarelli appeals from his judgment and sentence of life in prison without parole under the "two-strikes" amendment to the Persistent Offender Accountability Act (POAA) for his conviction of attempted first degree child molestation. We affirm.

## FACTS

On Christmas Eve 1998, Gimarelli entered the recreation room of the mobile home park where he lived. Gimarelli knew 11-year-old M.B. was sleeping there with her siblings. He went to M.B. and placed his hand on her stomach right below her navel. M.B. woke up and pushed Gimarelli away. A few minutes later, he began stroking her hair, and then slid his hand down the side of her body, across the side of her chest, to her hip. He then moved his hand over her navel to a point above her pubic region and pinched her. She again pushed him away, but a few minutes later he repeated this process. When she pushed him away a third time, she said she wanted her mother. Gimarelli asked where her mother was and learned that she was next door in her trailer. He then repeated the process a fourth time. Again M.B. pushed him away and asked for her mother. This time Gimarelli told her not to worry, it was okay, he would find her mother. He then left but did not go to her mother.

The State tried and convicted Gimarelli of attempted first degree child molestation based upon this incident. Gimarelli had a 1990 conviction of rape by forcible compulsion in Oregon, so the prosecutor sought a life sentence without the possibility of parole under the "two strikes" amendment to Washington's POAA. *See* RCW 9.94A-.030(29)(b). At sentencing, over the prosecutor's objection, Gimarelli introduced the jury verdict form from his 1990

Oregon rape conviction that showed the jury had not been unanimous in its verdict.[1] Gimarelli argued that the conviction was invalid on its face so it could not be considered as a strike, and he argued that life in prison would be cruel and unusual punishment. The trial court found that because the Oregon conviction was constitutional under the Oregon and United States Constitutions, it could consider the conviction and sentenced Gimarelli to life in prison. Gimarelli appeals his sentence.

## ANALYSIS

### THE OREGON CONVICTION

■ Under the Sentencing Reform Act of 1981,[2] before the State may use a prior conviction to enhance a defendant's sentence, it must prove the existence of that conviction by a preponderance of the evidence. *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999). The best evidence of the conviction is the prior judgment and sentence. *Ford*, 137 Wn.2d at 480. But if the judgment and sentence is not available, the State may use comparable documents or transcripts from the prior trial to prove the existence of the conviction. *Ford*, 137 Wn.2d at 480. A plea agreement is a sufficient substitute document. *See In re Personal Restraint of Thompson*, 141 Wn.2d 712, 718, 10 P.3d 380 (2000).

The State need not prove the constitutionality of prior convictions before it may use those convictions as part of a defendant's criminal history. *State v. Ammons*, 105 Wn.2d 175, 187, 713 P.2d 719, 718 P.2d 796, *cert. denied*, 479 U.S. 930 (1986). An exception to the rule is if another court has determined that the prior conviction was unconstitutional and thus could not be used for sentencing purposes, the State must prove the constitutionality of that conviction before it may use the conviction in the present case. *State v.*

---

[1] Oregon's constitution allows for nonunanimous verdicts in criminal cases. OR. CONST. art. I, § 11.

[2] Ch. 9.94A RCW.

*Burton*, 92 Wn. App. 114, 117, 960 P.2d 480 (1998), *review denied*, 137 Wn.2d 1017 (1999). Otherwise, as long as the conviction is constitutionally valid on its face, the State may use the conviction as part of the defendant's criminal history. *Ammons*, 105 Wn.2d at 187-88.

For a conviction to be constitutionally invalid on its face, the conviction must show constitutional infirmities on its face, without further elaboration. *Ammons*, 105 Wn.2d at 188. The face of the conviction includes any plea agreement, but it excludes other items such as jury instructions. *Thompson*, 141 Wn.2d at 718 (citing *Ammons*, 105 Wn.2d at 189). Likewise, the defendant may not impeach the conviction by offering testimony that his or her rights were violated. *State v. Bembry*, 46 Wn. App. 288, 291-92, 730 P.2d 115 (1986). The conviction need not show that a defendant's rights were not violated; rather, for the conviction to be constitutionally invalid on its face, the conviction must affirmatively show that the defendant's rights were violated. *Ammons*, 105 Wn.2d at 189.[3] The reason the defect must be apparent on the face of the conviction is because if a defendant were able to present evidence of defects in his or her prior convictions, it "would turn the sentencing proceeding into an appellate review of all prior convictions." *Ammons*, 105 Wn.2d at 188. The defendant must use

---

[3] *But see State v. Phillips*, 94 Wn. App. 313, 318, 972 P.2d 932 (1999). In *Phillips*, Division Three of this Court ruled that the State could not use Phillips' six prior diversion agreements to enhance his sentence because "[t]he prerequisites . . . for entering into a diversion agreement—including waiver of the right to counsel—must be apparent on the face of the agreement" and the prerequisites were not apparent in Phillips' agreements. *Phillips*, 94 Wn. App. at 318 (citing *Ammons*, 105 Wn.2d at 187-89). This statement is a misinterpretation of *Ammons* and was rejected by the Supreme Court in *In re Personal Restraint of Williams*, 111 Wn.2d 353, 368, 759 P.2d 436 (1988). In *Ammons*, the court rejected a claim that the plea agreement was constitutionally invalid on its face because the agreement did "not show the constitutional safeguards were *not* provided." *Ammons*, 105 Wn.2d at 189. In *Williams*, the court ruled that an earlier appellate case, which held that before a sentencing court could use a conviction based upon a plea to increase the defendant's offender score, the plea agreement must show that the defendant had either been represented by counsel or waived that right, was incorrect under the court's holding in *Ammons*. *Williams*, 111 Wn.2d at 368. Thus, to the extent that *Phillips* requires a conviction to show that a defendant's rights were protected, it is incorrect.

established avenues of appeal to challenge those prior convictions. *Ammons*, 105 Wn.2d at 188.

## The Face of the Conviction

The first issue before us is what is the "face of the conviction."

*Ammons* and *Bembry* provide examples of what does not qualify as the face of the conviction. In *Ammons*, the defendant offered the jury instructions and claimed that they denied him his constitutional rights. The court rejected this contention, stating, "The validity of that claim cannot be determined facially." *Ammons*, 105 Wn.2d at 189. In *Bembry*, the defendant testified at the hearing that he was never told the elements of the charge or informed of his right to remain silent before he pleaded guilty. The court "express[ed] . . . no opinion as to the merits of Bembry's claims" but ruled that the conviction did not show on its face that such constitutional safeguards were not provided. *Bembry*, 46 Wn. App. at 291.

Here, the State argues that because the judgment and sentence is sufficient to prove the Oregon conviction, once it offered that document, Gimarelli could not submit additional documents to prove a constitutional infirmity. Gimarelli counters, and the trial court found,[4] that the jury's verdict form is the most basic evidence of a conviction and, thus, he could rely upon it to show a constitutional infirmity.

The State's position is consistent with the purpose of not allowing a defendant to use a sentencing hearing to collaterally attack his or her prior convictions. *See Ammons*, 105 Wn.2d at 188. Moreover, in *Ammons*, the court refused to consider the jury instructions Ammons had submitted to

---

[4] Although the State has not assigned error to this ruling, no finding was entered to this effect and the appellate court may affirm the trial court on any ground. *See Gross v. City of Lynnwood*, 90 Wn.2d 395, 401, 583 P.2d 1197 (1978). Thus, we could affirm the trial court's decision to consider the Oregon conviction by finding that the jury verdict with its alleged infirmity was not part of the face of the conviction.

prove his prior conviction was unconstitutional. *Ammons*, 105 Wn.2d at 189.

On the other hand, Gimarelli's argument also has merit in that verdict forms do seem to be the most basic evidence of a conviction.[5] Moreover, the requirement is that the error appear on the face of the "conviction," not the face of the "judgment and sentence." *See Ammons*, 105 Wn.2d at 187-88.

Assuming, without deciding, that the verdict form qualifies as the conviction, Gimarelli's argument still fails because the conviction is not repugnant to either the U.S. or Oregon Constitution—the only constitutions relevant when determining whether the sentencing court could consider Gimarelli's 1990 Oregon rape conviction.

### *The Constitutionality of the Oregon Conviction*

▇▇▇ Under the Full Faith and Credit Clause of the U.S. Constitution,[6] a judgment from any other state is valid in Washington unless the foreign court lacked jurisdiction or the conviction is constitutionally invalid.[7] *State v. Berry*, 141 Wn.2d 121, 127-28, 5 P.3d 658 (2000).

To be constitutionally invalid, the conviction must be invalid under either the United States Constitution or the constitution of the state where the conviction was entered. *See State v. Morley*, 134 Wn.2d 588, 619, 952 P.2d 167 (1998); *State v. Johnston*, 17 Wn. App. 486, 498, 564 P.2d

---

[5] One thing is clear, the "conviction" does not mean whatever evidence the State uses to prove the conviction. This is because the State can rely upon evidence such as trial transcripts to prove the conviction, *see Ford*, 137 Wn.2d at 480, but the defendant may not use such evidence to prove a constitutional infirmity. *See Ammons*, 105 Wn.2d at 188-89; *Bembry*, 46 Wn. App. at 291.

[6] United States Constitution, article IV, section 1:

Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.

[7] As noted above, the infirmity should be apparent on the face of the conviction. *See Ammons*, 105 Wn.2d at 187-88.

1159, *review denied*, 89 Wn.2d 1007 (1977). *Cf. State v. Herzog*, 48 Wn. App. 831, 834, 740 P.2d 380 (1987). It is of no consequence that the judgment could not be sustained here in Washington. *Lee v. Ferryman*, 88 Wn. App. 613, 620, 945 P.2d 1159 (1997) (citing *Roche v. McDonald*, 275 U.S. 449, 48 S. Ct. 142, 72 L. Ed. 365 (1928)), *review denied*, 135 Wn.2d 1006 (1998).

In *Morley*, the defendant challenged the prosecution's ability to use his court-martial conviction as a strike by alleging that the military did not provide various constitutional protections, including a requirement for a unanimous verdict. The *Morley* court first held that all foreign convictions do not have to be obtained under a procedural system identical to Washington's because it would be "absolutely unworkable" if sentencing courts had to compare every aspect of each foreign jurisdiction before counting the convictions in defendants' criminal histories. *Morley*, 134 Wn.2d at 596. The court then noted that because Morley had requested a bench trial at his court-martial, it was irrelevant that the military did not require a unanimous verdict. *Morley*, 134 Wn.2d at 615. Nevertheless, the court went on to hold that "[i]f a court-martial complies with federal constitutional protections, nothing prevents a sentencing court from counting the court[-]martial as a prior conviction for purposes of sentencing." *Morley*, 134 Wn.2d at 619.

Similarly, in *Johnston*, the defendant challenged the sentencing court's ability to use a prior California conviction. The court rejected this contention because the defendant failed to cite any authority that proved the conviction was invalid under "either the federal or California State Constitution." *Johnston*, 17 Wn. App. at 498.

Conversely, in *Herzog*, the court held that the defendant's prior German conviction could not be used to enhance his current sentence because it was apparent on the face of that conviction that a two-person jury convicted the defendant. *Herzog*, 48 Wn. App. at 834. The German conviction violated his rights under the Sixth and Fourteenth Amend-

ments of the United States Constitution. *Herzog*, 48 Wn. App. at 834. Because courts should consider state constitutional issues before addressing federal issues, the *Herzog* court's failure to address the more protective Washington Constitution[8] suggests that the *Herzog* court did not think the Washington Constitution controlled. *See Robinson v. City of Seattle*, 102 Wn. App. 795, 808, 10 P.3d 452 (2000) (noting courts should address state constitutional issues before federal constitutional issues) (citing *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999)).

Here, Gimarelli's Oregon conviction is valid under both the Oregon and United States Constitution and thus, the trial court properly considered it as Gimarelli's first strike. The Oregon Constitution allows for convictions if 10 of 12 jurors find the defendant guilty beyond a reasonable doubt. OR. CONST. art I, § 11. Under the United States Constitution, a state conviction by a nonunanimous jury is permissible. *Apodaca v. Oregon*, 406 U.S. 404, 413, 92 S. Ct. 1628, 32 L. Ed. 2d 184 (1972) (plurality opinion). Thus, although it was apparent on the face of Gimarelli's conviction that the verdict was not unanimous, the conviction was valid in Oregon under the Oregon and U.S. Constitutions, and the Washington court was compelled by the Full Faith and Credit Clause to accept the conviction.

Gimarelli argues against this conclusion by stressing that the Washington Constitution requires unanimous verdicts. But in other situations, Washington courts have refused to apply standards from the Washington Constitution to actions by actors who are not bound by the Washington Constitution. For example, under the "silver platter" doctrine, evidence gained by federal officials in violation of the Washington Constitution, but not in violation of the federal constitution, is admissible in a Washington state prosecution as long as the federal officials were not acting as agents of state law enforcement. *In re Personal Restraint*

---

[8] Article I, section 21 of the Washington Constitution is more protective than its federal counterpart. *See State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994).

*of Teddington*, 116 Wn.2d 761, 772-73, 808 P.2d 156 (1991). That doctrine is based upon the idea that because state constitutions have inherent jurisdictional limits, it would disserve the principles of federalism and comity to subject foreign law enforcement officers to state constitutions. *Teddington*, 116 Wn.2d at 774. Just as article I, section 7 of the Washington Constitution does not apply to evidence gained by federal officers, article I, section 21 of the Washington Constitution does not apply to Oregon juries.

CRUEL AND UNUSUAL PUNISHMENT

The trial court sentenced Gimarelli to life in prison without parole because he qualified as a persistent offender under Washington's "two strikes" law. Gimarelli does not argue that his Oregon conviction, if constitutional, would not count as a strike, qualifying him as a persistent offender; rather, he asserts that life in prison without parole would be cruel and unusual punishment and a violation of article I, section 14 of the Washington Constitution.

 Article I, section 14 of the Washington Constitution prohibits cruel and unusual punishment and provides more protection than its federal counterpart. *State v. Fain*, 94 Wn.2d 387, 392, 617 P.2d 720 (1980) (holding that the defendant's life sentence for his third conviction for writing bad checks was cruel and unusual). Article I, section 14 protects against sentences that are grossly disproportionate to the crime committed. *State v. Morin*, 100 Wn. App. 25, 29, 995 P.2d 113, *review denied*, 142 Wn.2d 1010 (2000). To determine if a sentence of life in prison without the possibility of parole under the POAA is grossly disproportionate, appellate courts should consider the four *Fain* factors: (1) the nature of the crime; (2) the legislative purpose behind the sentence; (3) the sentence the defendant would receive for the same crime in other jurisdictions; and (4) the sentence the defendant would receive for other similar crimes in Washington. *Morin*, 100 Wn. App. at 29 (citing *Fain*, 94 Wn.2d at 397). These are merely factors to

consider and no one factor is dispositive. *See Morin*, 100 Wn. App. at 31-34 (noting "it appears unlikely that [Morin's crime] would result in life without parole" in other jurisdictions, but affirming the life sentence).

Under the first *Fain* factor, courts consider whether the crime is a violent crime and whether it is a crime against a person or property. *Morin*, 100 Wn. App. at 30. Courts should also consider the actual facts of the case. *Morin*, 100 Wn. App. at 31. Here, Gimarelli committed attempted child molestation in the first degree. This is a most serious and violent sex offense. *See* RCW 9.94A.030(25)(a), (36)(a), (41)(a). It is also a crime against a person. Gimarelli had actual contact with the child, repeatedly touching her in her abdominal region over her protests.[9] This violent sex offense against a child stands in marked contrast to the property crime in *Fain*.

Under the second *Fain* factor, the Legislature was concerned about the recidivism of sex offenders when it passed the "two strikes" amendment to the POAA, but did not intend to supplant the purposes of the POAA. *Morin*, 100 Wn. App. at 31. Thus, the purposes of the two strikes amendment is to provide mandatory sentences for repeat offenders to deter such crimes and protect society. *Morin*, 100 Wn. App. at 31. Here, Gimarelli had previously committed a rape by forcible compulsion, which he did not think was a "big deal" and "didn't really even matter," Clerk's Papers at 18-19, and now he has attempted to molest an 11-year-old girl. Based upon this conduct, Gimarelli's sentence is consistent with the purposes of the POAA.

Under the third *Fain* factor, most states that have "two strikes" laws require sex offenses with some degree of penetration and infliction of serious bodily harm. *Morin*, 100 Wn. App. at 32-33. Thus, it is unlikely that Gimarelli's attempted child molestation would earn him a life sentence

---

[9] Gimarelli's prior crime was rape by forcible compulsion. Gimarelli admitted to the past rape, but protested, "It was just like a 5 minute thing that didn't really even matter." Clerk's Papers at 18. Gimarelli also thought it relevant that he had been doing a lot of charity for the victim and her husband before the rape.

in other jurisdictions. As noted, however, this factor is not dispositive.

Finally, under the fourth *Fain* factor, first degree child molestation is a class A offense and it is a most serious violent sex offense. *See* RCW 9A.44.083. Other most serious violent sex offenses, such as first or second degree rape and first or second degree rape of a child also would qualify an offender for life in prison if they had a prior rape conviction. *See* RCW 9.94A.030(29)(b)(i)(A). Likewise, an attempt at any of those crimes, even though the attempts would be only class B crimes, would have the same result. *See* RCW 9.94A.030(29)(b)(i)(C). Thus, the sentence Gimarelli received is comparable to the sentence he would have received for committing similar crimes.

Based upon these factors, we hold that Gimarelli's sentence is not grossly disproportionate to his crime. He is a convicted rapist who repeatedly and persistently attempted to molest an 11-year-old girl. The Legislature has a right to discourage such behavior and protect the public from such offenders. Although the sentence may be harsher than Gimarelli would have received in other jurisdictions, it is not harsher than he would have received for similar crimes in Washington.

Affirmed.

BRIDGEWATER and QUINN-BRINTNALL, JJ., concur.

Review denied at 144 Wn.2d 1014 (2001).