# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59142-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BRENTON DWAYNE THOMPSON, aka DWAYNE THOMPSON BRENTON, aka "ROCK", | |
| Appellant. | |

CHE, J. — Brenton Dwayne Thompson appeals his judgment and sentence following resentencing pursuant to *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). Thompson argues that the superior court (1) lacked jurisdiction to resentence him, (2) violated his double jeopardy rights by entering of a new judgment and sentence, (3) erred in including two prior convictions entered and sentenced after the conviction invalidated following *Blake*, and (4) erred in imposing a standard sentencing range sentence. Thompson additionally raised multiple claims related to alleged errors at trial. We hold that (1) Thompson fails to show that the superior court lacked jurisdiction at resentencing, (2) the new judgment and sentence did not violate Thompson's double jeopardy rights, (3) the superior court did not err in including Thompson's prior convictions in his offender score calculation, (4) the superior court did not abuse its discretion in sentencing Thompson to a standard range sentence, and (5) Thompson's other claims rest on facts outside the record on appeal. Accordingly, we affirm.

FACTS

In 2000, a jury found Thompson guilty of first degree murder and first degree assault and found by special verdict that Thompson or an accomplice was armed with a firearm during the commission of both offenses.[1]  The superior court sentenced Thompson based, in part, on a criminal history that included a 1994 conviction for unlawful possession of a controlled substance (UPCS) and two 1995 convictions for unlawful solicitation to deliver a controlled substance and unlawful solicitation to possession of a controlled substance with intent to deliver.

Thompson appealed his convictions and assigned error to an accomplice liability instruction, a lack of sufficient evidence for both convictions, and the absence of an unanimity instruction.  *State v. Thompson*, noted at 117 Wn. App. 1085, 2003 WL 21744337, at *1 (unpublished).  Thompson also claimed that the superior court erred in excluding exculpatory hearsay evidence, that the jury's verdicts were inconsistent, and that the superior court was biased against him.  *Id*.  As to the murder conviction, this court affirmed and concluded any error in the accomplice liability instruction was harmless.  *Id.* at *9.  But as to the assault conviction, we concluded the error with the accomplice liability instruction was not harmless, reversed the conviction, and remanded for a new trial.  *Id.* at *3, *6.

In 2004, a jury again found Thompson guilty of first degree assault and found by special verdict that Thompson had been armed with a firearm during the commission of the crime.  *State v. Thompson*, noted at 132 Wn. App. 1022, 2006 WL 853368, at *1-2 (unpublished).  At

---

[1] The facts underlying these offenses, which Thompson committed in 1998, are presented in the opinions resulting from Thompson's first and second appeals.  *State v. Thompson*, noted at 117 Wn. App. 1085, 2003 WL 21744337, at *1-2 (unpublished); *State v. Thompson*, noted at 132 Wn. App. 1022, 2006 WL 853368, at *1-2 (unpublished).  For the purposes of this appeal, we need not repeat them here.

sentencing, the superior court again found Thompson to have a criminal history that included a prior UPCS conviction.

Thompson appealed, assigning error to the admission of certain testimony and the sufficiency of the evidence. *Id.* at *2-5. In a statement of additional grounds (SAG), Thompson also claimed that the superior court erred in admitting other evidence, a limiting jury instruction denied him a fair trial, his murder and assault convictions violated the federal double jeopardy clause, and the superior court erred in not applying collateral estoppel to a pretrial suppression motion. *Id.* at *5-8. This court affirmed. *Id.* at *9.

Thompson filed a personal restraint petition (PRP) with this court. Thompson raised an ineffective assistance of counsel claim, argued that RCW 9.94A.120 was unconstitutional, repeated a claim from his direct appeal, and challenged the imposition of a firearm sentencing enhancement, the inclusion of two prior convictions in his criminal history, and his offender score which included his other current offense. This court granted the petition in part, remanding for resentencing to correct Thompson's offender score, but otherwise denied all other claims.

At resentencing in 2006, the superior court found again that Thompson's criminal history included a prior UPCS conviction and the two solicitations to deliver or to possess with intent to deliver controlled substances. The superior court resentenced Thompson, sentencing him to 604 months of total confinement based on high-end standard range sentences for both the first degree murder and first degree assault convictions and two 60-month sentence enhancements for each offense, running consecutively to each other. *See* RCW 9.94A.310(1)-(2) (1998).

Thompson appealed. *State v. Thompson*, 143 Wn. App. 861, 865, 181 P.3d 858 (2008). He claimed that the superior court erred in calculating his offender score and that the superior court violated the law of the case doctrine. *Id.* at 865, 868. In a SAG, Thompson repeated an

3

argument from his PRP related to a sentencing enhancement. *Id*. at 869. Thompson also raised a claim related to a restitution order, community placement, and a firearm enhancement. *Id*. at 870-71. Ultimately, this court affirmed. *Id*. at 871.

In 2021, following our Supreme Court's decision in *Blake* and upon Thompson's motion, the superior court dismissed with prejudice Thompson's prior UPCS conviction. *See* CP at 24-27. Thereafter, Thompson filed a series of motions with the superior court.

Included in the motions was a motion for a new trial under CrR 7.5(a) and a motion to exclude enhancement consideration.[2] In these motions, Thompson raised a jury unanimity issue and argued that the superior court lacked authority to impose firearm sentencing enhancements because of an instruction error.

In another motion, Thompson asked the superior court to determine that the judgment and sentence for his two 1995 convictions for solicitation to deliver or to possess with intent to deliver were invalid because that superior court had imposed community placement. Because of this alleged invalidity, Thompson argued that the superior court should not consider the convictions as part of his criminal history at resentencing.

In October, the superior court set a date for "Blake - Resentencing," and both the parties as well as the judge signed the scheduling order. Clerk's Papers (CP) at 55 (most capitalization omitted). Thompson then filed a motion and a memorandum, asking the superior court to impose an exceptional downward sentence because his sentence no longer advanced the interest of justice and he was 24 years old at the time of the crimes so his youthfulness warranted his

---

[2] Thompson also filed a sentencing memorandum where Thompson asked the superior court "to ensure that all rights due to him are afforded in this case." CP at 52.

request. Thompson's counsel also moved to withdraw based on Thompson's request to proceed pro se.

In December 2023, the superior court held a resentencing hearing. After engaging in colloquy with Thompson and cautioning Thompson about the risks of proceeding without counsel, the superior court granted Thompson's request to proceed pro se and appointed standby counsel.

The superior court then addressed Thompson's petition for writ of habeas corpus filed just before the hearing. In the petition, Thompson argued that he should be released immediately because the inclusion of his UPCS conviction in his offender score calculation made his judgment and sentence constitutionally invalid. The superior court found that it did not have jurisdiction to hear the petition. The superior court stated:

> I'm not finding that the judgment and sentence itself is invalid. The offender score, based upon the *Blake* decision, has been reduced. And so because of that, there is a necessity for a resentencing.

Rep. of Proc. (RP) at 19.

Turning to Thompson's motion for a new trial and motion to exclude enhancement consideration, the State argued that such motions were time barred and should be transferred to the Court of Appeals as personal restraint petitions pursuant to CrR 7.8(c)(2).[3] Thompson stated

---

[3] Under CrR 7.8(c)(2):

> The court shall transfer a motion filed by a defendant to the Court of Appeals for consideration as a personal restraint petition unless the court determines that the motion is not barred by RCW 10.73.090 and either (i) the defendant has made a substantial showing that they are entitled to relief or (ii) resolution of the motion will require a factual hearing.

that, if the superior court were to rule that his judgment and sentence was not "invalid,"

Thompson would withdraw those motions. RP at 20-21. The superior court stated,

> I've made the ruling that I'm not vacating the judgment and sentence. There is a need for a resentencing based upon *Blake* and a change in the offender score. So the timeliness issue still applies under [CrR] 7.5.[4]

RP at 22. Thompson responded that, given that the superior court decided that Thompson's

judgment and sentence was not invalid, he voluntarily withdrew both motions.

The superior court proceeded with "[a] full [de novo] resentencing hearing." RP at 22.

The State recommended a high-end standard sentence for both convictions.[5] Thompson

presented an allocution and requested that the court impose an exceptional downward sentence

and asked the court to consider his youthfulness at the time of the underlying crimes as well as

his efforts to better himself in prison.

The superior court began its oral ruling by noting that it read all of Thompson's materials,

a sentencing memorandum from the State, statements from one of the victim's family, and the

prior appellate decisions. The court found Thompson's offender score to be 2 points for the first

degree murder count and 0 points for the first degree assault count.

---

RCW 10.73.090(1) provides that "[n]o petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction."

[4] CrR 7.5(b) states, among other things, that a motion for a new trial must be served and filed within 10 days after the verdict or decision, unless the deadline is extended.

[5] A standard sentencing range for first degree murder with an offender score of two was between 261 and 347 months of confinement. RCW 9.94A.510(1) (1998). A standard sentencing range for first degree assault with an offender score of zero was between 93 and 123 months of confinement. RCW 9.94A.510(1) (1998). Both convictions carried a firearm sentencing enhancement of 60 months each. RCW 9.94A.510(2) (1998).

The court noted that Thompson was a few months over 24 years old at the time of the crimes. The court acknowledged "that there has been development in the understanding of brain science and . . . that the brain is not fully developed until the age of 25." RP at 43. The court stated that, while no case required the court to consider Thompson's age given that he was older than 20 years old, "I have the discretion to do that." RP at 44. The court then discussed facts underlying the crimes including "plenty of evidence that [the murder] was a premeditated intentional murder." RP at 45.

In the middle of the superior court's oral ruling, two unidentified observers in the gallery and a participant via video conferencing interrupted the superior court and asked whether they may speak in support of Thompson. The superior court responded, "it was not presented to me that there were—there was anybody else that wished to address the Court. I've heard from Mr. Thompson. He gets the last word." RP at 46. The court continued delivering its oral ruling.

The superior court acknowledged that Thompson had accomplished a lot while in prison and that he was "not the same person that [he was.]" RP at 47. The court noted several of the Sentencing Reform Act of 1981's expressed purposes of sentencing[6] before stating:

> I've thought about this quite a bit in looking at [the purposes], in looking at how old you were when this happened and looking at the actions that you've taken since this time period and, most importantly, looking at what happened on that night. I don't find any basis to do anything other than the high end of the sentencing range on the murder in the first degree. . . . You're the one that committed that offense. You're the one that chased [the victim] down. She was trapped against a fence. You shot her six times, fired eight rounds.
>
> If there's any consideration the Court would give, it would be in regards to the assault in the first degree. . . . the record showed that it was [an accomplice] who had fired the first shot, apparently at [a second victim].

RP at 48-49.

---

[6] *See* RCW 9.94A.010.

7

The superior court sentenced Thompson to a high-end sentence of 347 months of confinement for the murder conviction, a low-end sentence of 93 months for the assault conviction, and two 60-month sentence enhancements, running consecutively to each other, for a total confinement of 560 months. Both parties as well as the superior court signed the new judgment and sentence.

Thomspon appeals.

ANALYSIS

I. JURISDICTION

Thompson appears to argue that the superior court lacked jurisdiction to enter a new judgment and sentence because his judgment and sentence was "'constitutionally invalid on its face.'" Am. Br. of Appellant at 4, (quoting *State v. Ammons*, 105 Wn.2d 175, 187, 713 P.2d 719 (1986)). Thompson also contends the superior court erred by not considering his writ of habeas corpus. However, Thompson does not appear to present argument related to the court's decision to decline to consider his writ of habeas corpus and, instead, argues that the superior court lacked jurisdiction "to enter a new and intervening Judgment And Sentence." Am. Br. of Appellant at 5. Thus, we interpret Thompson's claim as assigning error to only his most recent judgment and sentence. We disagree with Thompson's claim that the superior court lacked jurisdiction.

"'Jurisdiction means the power to hear and determine'" a matter. *State v. Posey*, 174 Wn.2d 131, 139, 272 P.3d 840 (2012) (quoting *State v. Werner*, 129 Wn.2d 485, 493, 918 P.2d 916 (1996)). In all felony cases, Washington superior courts have original jurisdiction. *Id.* at 135; *see also* WASH. CONST. art. IV, § 6. Additionally, Washington superior courts have personal jurisdiction over anyone who commits a crime, in whole or in part, within the state. RCW 9A.04.030(1); *State v. Anderson*, 83 Wn. App. 515, 518, 922 P.2d 163 (1996).

Here, the superior court had original jurisdiction over Thompson because he was convicted of two felonies, first degree murder and first degree assault. RCW 9a.32.030; RCW 9a.36.011(2). And the superior court had personal jurisdiction over Thompson because he committed these underlying offenses while in Washington State.

Thompson appears to contend that the superior court lacked jurisdiction because his 2000 and 2006 judgment and sentences were invalid. *See* Am. Br. of Appellant at 5. However, jurisdiction is the power to hear and determine a case and "is comprised of only two components: jurisdiction over the person and subject matter jurisdiction," both present in Thompson's case. *Freedom Found. v. Teamsters Loc. 117 Segregated Fund*, 197 Wn.2d 116, 141, 480 P.3d 1119 (2021). While *Blake* changed Thompson's offender score by one point, it did not terminate or sever the superior court's jurisdiction to resentence Thompson using the correct offender score. Thompson fails to show that the superior court lacked jurisdiction in his case.

## II. DOUBLE JEOPARDY

Thompson argues that the superior court violated his double jeopardy rights by resentencing him but not vacating the 2006 judgment and sentence. We disagree the court violated his right against double jeopardy.

We review de novo claims that a person's double jeopardy rights have been violated. *State v. Lee*, No. 103451-2, slip op. at 9 (Wash. Jan. 15, 2026), https://www.courts.wa.gov/ opinions/pdf/1034512.pdf. "'The prohibition on double jeopardy generally means that a person cannot be prosecuted for the same offense after being acquitted, be prosecuted for the same offense after being convicted, or receive multiple punishments for the same offense.'" *Id,* at 9 (quoting *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014)).

9

To support his claim that a double jeopardy violation has occurred, Thompson relies on *State v. Carter*, 3 Wn.3d 198, 548 P.3d 935 (2024). In *Carter*, the superior court resentenced Carter—an individual who was serving a mandatory life without parole sentence for a crime he committed when he was 18 years old—after Carter filed a CrR 7.8 motion following the Washington Supreme Court's decision in *In re Personal Restraint of Monschke*, 197 Wn.2d 305, 482 P.3d 276 (2021). *Id.* at 203-204. *Monschke* held that mandatory life without parole sentences were unconstitutional for his age and that superior courts must consider an 18-year-old defendant's youthfulness at sentencing. *Id.* at 203; *see Monschke*, 197 Wn.2d at 306-307. The superior court resentenced Carter but did not explicitly vacate his original judgment and sentence. *Id.* at 205, 208.

On appeal, the State argued that the superior court violated procedures addressing double jeopardy principles by resentencing Carter and not vacating his original judgment and sentence. *Id.* at 228. Our Supreme Court held that the superior court did not err and that no double jeopardy violation occurred. *Id.* at 229. The Supreme Court reasoned that the superior court's oral ruling "clearly resentencing Carter" and other orders "impliedly vacated the prior judgment." *Id*. The orders included a joint order setting a resentencing date and the new judgment and sentence, both signed by the parties and the superior court judge. *Id*.

Thompson argues that his case is distinguishable from *Carter* because "nothing in this record evidences that 'the sentence was impliedly vacated.'" Am. Br. of Appellant at 5 (quoting *Carter*, 3 Wn.3d at 229). We disagree. Like in *Carter*, the superior court clearly resentenced Thompson and thus, impliedly vacated the prior judgment and sentence. It provided Thompson with a full de novo resentencing hearing which was scheduled via an order signed by both parties

and the judge. After the superior court's oral ruling, both parties signed the new judgment and sentence which reflected resentencing.

When considering Thompson's motion for a new trial and motion to exclude enhancement consideration before addressing resentencing, the superior court stated it was not "vacating the judgment and sentence." RP at 22. However, from a review of the whole record, the superior court's oral ruling, the setting order, and the judgment and sentence, evidence that the superior court impliedly vacated the prior judgment once it conducted the full resentencing hearing. Thompson fails to show that a double jeopardy violation occurred.

### III. OFFENDER SCORE

Thompson argues that the superior court erred in calculating his offender score by finding that Thompson's criminal history included two 1995 convictions for solicitation to deliver controlled substances or to possess with intent to deliver controlled substances, which Thompson claims are invalid. We disagree.

"We review a sentencing court's calculation of an offender score de novo." *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003). The State bears the burden of proving the existence of prior convictions by a preponderance of the evidence; however, the State is not required to prove the constitutionality of the prior convictions. *State v. Gimarelli*, 105 Wn. App. 370, 378, 20 P.3d 430 (2001); *Ammons*, 105 Wn.2d at 187. If the conviction is constitutionally valid on its face and no other court has determined that the prior conviction is unconstitutional, the State may use it as part of the defendant's criminal history. *Gimarelli*, 105 Wn. App. at 375-76.

A conviction is facially invalid if the conviction "show[s] constitutional infirmities on its face, without further elaboration." *Id*. at 375. The requirement of facial invalidity protects sentencing proceedings from becoming appellate reviews of all prior convictions. *Id*.

11

Thompson asserts that his two 1995 convictions were facially invalid because they occurred after the simple possession of controlled substance conviction and included the simple possession conviction in the two 1995 offender score calculations. However, crimes occurring after a UPCS conviction and using a prior UPCS conviction to calculate an unrelated offender score does not necessarily invalidate a prior judgment and sentence. *See State v. Anderson*, __ Wn. App. __, 583 P.3d 38, 46 ("In cases where a judgment and sentence is final, a defendant must demonstrate materiality before they are entitled to resentencing, even if their offender score contains a point for a *Blake* conviction."); *see also State v. Kelly*, 4 Wn.3d 170, 183, 561 P.3d 246 (2024) ("[E]ven when an offender score is miscalculated, if it did not alter the proper standard sentencing range, and the [superior] court imposed a sentence within its statutory authority, then the judgment and sentence is not facially invalid."). Accordingly, Thomspon's argument that his 1995 convictions were facially invalid and should not have been included in his offender score calculation fails.

## IV. STANDARD RANGE SENTENCE

Thompson assigns error to the superior court's ultimate imposition of a standard range sentence, arguing that the superior court did not focus enough on evidence of Thompson's mitigation and rehabilitation efforts and that the superior court refused to allow testimony after Thomspon's allocution. We disagree that the court erred.

When the superior court conducts a resentencing hearing, the sentencing judge has discretion and so we review their decision for an abuse of discretion. *State v. Ellis*, 5 Wn.3d 549, 557, 579 P.3d 37 (2025). An abuse of discretion occurs if the superior court's decision is exercised on untenable grounds or for untenable reasons. *Id.* at 558.

Generally, a defendant cannot appeal a standard range sentence. RCW 9.94A.585(1); *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017). However, a defendant may challenge the underlying legal determinations through which the sentencing court reached its decisions. *Id.* Additionally, "every defendant is entitled to have an exceptional sentence actually considered." *Id.* When the sentencing court has refused to exercise any discretion or relies on an impermissible basis for refusing to impose an exceptional downward sentence, a standard range sentence is reviewable. *Id.*

Neither such circumstance is evident from the record before us. There is no evidence that the superior court categorically refused to consider a mitigated sentence for Thompson or relied on an impermissible basis for refusing to impose an exceptional sentence below the standard range. Instead, the court acknowledged its discretion to consider Thompson's relative youth at the time of the crimes as well as his rehabilitation efforts during confinement. Despite Thompson's age at the time of the offenses and his rehabilitation efforts, the superior court found the circumstances of the crimes, especially the facts underlying the murder conviction, warranting imposition of the standard range sentence for both crimes. Moreover, the superior court reduced Thompson's sentence on the first degree assault from the high end to the low end. *See* CP at 97, 101. Because the superior court exercised its discretion to consider Thompson's argument for an exceptional downward sentence, Thompson fails to show that the superior court abused its discretion in imposing a standard range sentence.

Additionally, RCW 9.94A.500 requires the sentencing court to allow arguments from "the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representation of the victim or survivor, and an investigative law enforcement officer." But Thomspon does not claim that the individuals fell within one of these groups or another that the

13

superior court was required to allow to speak before rendering judgment. Although the superior court excluded the unidentified individuals from speaking in Thompson's support as the court was about to deliver its sentence, Thompson fails to show how that was an abuse of discretion under the circumstances.

Because the resentencing court did not fail to exercise its discretion in considering Thompson's sentence nor unreasonably prohibit Thomspon's sought after evidence, no abuse of discretion occurred.[7]

## V. OTHER CLAIMS

Outside of resentencing, Thompson raises multiple claims related to events that occurred at trial. Thompson argues that he is entitled to a new trial because of a jury unanimity issue. Additionally, Thompson appears to argue that a jury instruction error occurred at trial. Thompson also argues that the State violated his due process rights by allowing the superior court to rest its "reasoning . . . based entirely on the State's 'interpretation' of the crime scene evidence." Am. Br. of Appellant at 10.

However, all three of these arguments rely on facts outside of the scope of the record on appeal. Because they do, these arguments are instead better raised in a personal restraint petition. *McFarland*, 127 Wn.2d at 338 n.5; RAP 16.3. We decline to consider these arguments.

---

[7] Thompson also argues that the resentencing proceeding was "fundamentally unfair" and deprived him of rights. Am. Br. of Appellant at 5-6. Thompson appears to argue that the superior court deprived him of his right to argue his motion for a new trial and that the superior court erred by failing to rule on his motion for a new trial. However, Thompson voluntarily withdrew his motion for a new trial at resentencing. We consider this argument no further.

No. 59142-1-II

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Veljacic, A.C.J.

Price, J.

15