[No. 40120-3-I.    Division One.    March 20, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. SEAN T. MORIN, *Appellant*.

*James W. Nelson,* for appellant.
*Thomas L. Verge, Prosecuting Attorney,* and *Erik Pedersen, Deputy,* for respondent.

ELLINGTON, J. — Sean Morin broke into a retirement center, pulled down the pajamas of a 95-year-old blind woman, touched her in her vaginal area, and covered her mouth to keep her quiet. He then stole her wallet. Morin was convicted of robbery in the first degree, burglary in the first degree, and indecent liberties by forcible compulsion. Because he had previously been convicted of rape in the first degree, Morin was sentenced to life in prison without parole under Washington's Persistent Offender Accountability Act (POAA). His appeal challenges the constitutionality of the "two strikes" version of the statute and raises certain trial issues.[1] We hold the sentence is not unconstitutional, reject Morin's other arguments, and affirm.

---

[1]This matter has had a somewhat tortured course on appeal. Morin's first appellate counsel, Suzanne Elliott, filed a brief challenging the constitutionality of the two strikes statute and the sufficiency of the evidence. Morin objected to the brief insofar as it challenged the two strikes statute, essentially asserting he was wrongly convicted, had other issues to present, and should not be forced to make an argument regarding the sentencing statute. Richard Tassano was appointed as substitute counsel. He consulted with Morin but agreed with previous counsel as to the issues to be presented, and let the brief stand. Despite the court's invitation, Morin filed no pro se supplemental brief at that time, and the matter was argued in December 1998 on the two strikes issue. Following oral argument, Morin filed a motion to withdraw his appeal. On March 8, 1999, we remanded for the trial court to determine whether Morin's motion was made knowingly, intelligently, and voluntarily. On May 11, 1999, the trial court entered written findings that Morin did not wish to waive his right to appeal, but also did not want to challenge his sentence under the two strikes statute. Instead, he wished to strike the brief filed by his original appellate counsel so he could pursue separate issues.

## FACTS

In 1996, Ann Smith was 95 years old and blind. She lived alone at the Cap Sante Court Retirement Center, an independent living complex. On July 19, Sean Morin broke into Smith's apartment through her window. After a neighbor heard some commotion in Smith's room, police were contacted, and Morin was apprehended trying to escape through the window.

The police found Smith in bed with her pajama bottoms around her knees and nothing else covering her. Her chin was scraped, and the left side of her face had blood on it. She was visibly shaken. Smith told the police: "He tried to rape me. I told him I was too old for that. He said he wanted to rob me. I told him my wallet was in the drawer of the dresser." She also told the officer that "[h]e stuck his hand down here," pointing to her vagina. She said that when the defendant touched her, she screamed, and he put his hand over her mouth and told her to shut up. Morin told her that he would not hurt her if she kept quiet.

Smith related the same story to paramedics and to a doctor in the emergency room. The doctor noted that the small cut and bruise on the left side of her face could be consistent with someone having placed a hand on her face with some force. The next morning, Smith saw her family physician and told him that a man had broken into her apartment, wanted some money, and put his hand down the front of her pajamas. Her physician also noted that Smith had some abrasions on her cheek.

---

The trial court found that if Morin were required to choose between having the appeal pursued on the issues already raised or withdrawing his appeal, Morin would choose to withdraw the appeal. The trial court appointed new counsel.

On May 19, 1999, this court stayed the proceedings, struck the original brief, and permitted Morin's new counsel, James Nelson, to file new a brief, which he did. Despite Morin's stated desire to eliminate his challenge to the two strikes provision, the arguments made in the original brief appear verbatim in Nelson's new brief, together with several new arguments. Morin filed a pro se supplemental brief raising additional issues thereafter, but made no objection to Nelson's brief. The State responded in September 1999. Morin filed an "attachment" to his pro se brief in December 1999. During this time Morin has made no objection to the substance of the new briefs before the court. We therefore reach the two strikes issue.

At the police station, Morin admitted that he broke into Smith's apartment because he wanted money. He admitted to taking two wallets from Smith, although he saw no money in them. He told the detective that when Smith started screaming, he put his hand over her mouth and told her to shut up, and that if she kept quiet, he would not hurt her. When he heard a knock at the door, Morin attempted to flee through the window.

Morin was charged with robbery in the first degree, burglary in the first degree, and indecent liberties by forcible compulsion. A jury found him guilty on all counts. Before sentencing, Morin stipulated to a prior conviction of rape in the first degree. Morin was sentenced to life in prison without possibility of parole.

## DISCUSSION
### Cruel and Unusual Punishment

Washington's Persistent Offender Accountability Act, RCW 9.94A.120(4), also known as the "three strikes law," has been upheld under both the federal and state constitutions.[2] In 1996, the legislature amended the law to classify certain sex offenders as persistent offenders after two convictions.[3] Morin was sentenced under this amendment.

---

[2]*State v. Manussier,* 129 Wn.2d 652, 921 P.2d 473 (1996); *State v. Rivers,* 129 Wn.2d 697, 921 P.2d 495 (1996); *State v. Thorne,* 129 Wn.2d 736, 921 P.2d 514 (1996).

[3]RCW 9.94A.030(27)(b). The statute provides:

"Persistent offender" is an offender who:

. . . .

(b)(i) Has been convicted of: (A) Rape in the first degree, rape of a child in the first degree, child molestation in the first degree, rape in the second degree, rape of a child in the second degree, or *indecent liberties by forcible compulsion;* . . . .

(ii) Has, before the commission of the offense under (b)(i) of this subsection, been convicted as an offender *on at least one occasion,* whether in this state or elsewhere, of an offense listed in (b)(i) of this subsection.

RCW 9.94A.030(27) (emphasis added).

■ Morin contends his sentence of life without the possibility of parole violates the federal and state constitutions. The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishment," and article I, section 14 of the Washington Constitution prohibits "cruel punishment." The prohibition in the Washington Constitution affords greater protection than its federal counterpart.[4] Therefore, if the state provision is not violated, the statute violates neither constitution.[5]

■ A sentence violates article I, section 14 of the Washington State constitution when it is grossly disproportionate to the crime for which it is imposed. The factors for consideration were set forth in *State v. Fain*[6]: (1) the nature of the offense; (2) the legislative purpose behind the statute; (3) the punishment the defendant would have received in other jurisdictions; and (4) the punishment imposed for other offenses in the same jurisdiction.[7] The question is whether, after consideration of these factors, the sentence

---

[4]*Manussier,* 129 Wn.2d at 674.

[5]*See Rivers,* 129 Wn.2d at 712; *Thorne,* 129 Wn.2d at 772-73. We note that a closely divided United States Supreme Court has upheld a mandatory sentence of life without possibility of parole on a first strike drug offense (possession of more than 650 grams of cocaine), holding it does not violate the Eighth Amendment prohibition against cruel and unusual punishment, and rejecting proportionality analysis. *Harmelin v. Michigan,* 501 U.S. 957, 994, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991). Justice Kennedy, writing for a plurality of four, confined proportionality analysis to rare cases "in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin,* 501 U.S. at 1005. The court also did not require consideration of mitigating factors such as Harmelin's lack of any prior felony convictions, holding that such penalties "may be cruel, but they are not unusual in the constitutional sense." *Harmelin,* 501 U.S. at 994. As one commentator noted, "If the imposition of a life sentence for first-offense drug possession is consistent with the Eighth Amendment, no prison sentence short of life can be deemed disproportionate for any offense, and even a life sentence cannot be considered constitutionally unsound for any arguably serious crime." *The Supreme Court 1990 Term—Leading Cases,* 105 Harv. L. Rev. 177, 252 (1991).

[6]*State v. Fain,* 94 Wn.2d 387, 397, 617 P.2d 720 (1980).

[7]*See Thorne,* 129 Wn.2d at 773; *Rivers,* 129 Wn.2d at 712-13.

of life in prison without possibility of parole is grossly disproportionate to the offense committed.[8]

As to the nature of the offenses, rape in the first degree (Morin's "first strike") is considered a "serious violent offense,"[9] and indecent liberties by forcible compulsion (his "second strike") is a "violent offense."[10] Both are also categorized as "most serious offenses."[11] Both crimes were committed against persons as opposed to property, a factor given considerable weight by our Supreme Court in upholding the three strikes law.

For example, in *Rivers*, the court considered the predicate crime of second degree robbery. Rivers robbed an espresso bar employee of the evening's cash receipts by claiming to have a gun. After a struggle, Rivers ran off with the bank bag. When the employee chased him and caught up, Rivers pretended to have a gun in his pocket and threatened to "blow your head off." The court noted that the "nature of the crime of robbery includes the threat of violence against another person," and that Rivers' crime "involved a threat of violence toward another person and therefore is a far more serious offense than the second degree theft committed by the defendant in *Fain*."[12]

Here, indecent liberties by forcible compulsion necessarily involves some force or threat of force against a person.[13] As with robbery in the second degree, the degree of force may vary. Robbery in the second degree is committed (without infliction of actual injury) by use or threatened use of force, violence or fear of injury; the degree of force is

---

[8]*See Thorne*, 129 Wn.2d at 776; *Rivers*, 129 Wn.2d at 715.

[9]"Serious violent offense" is a subcategory of violent offense. RCW 9.94A.030(31).

[10]RCW 9.94A.030(38)(a).

[11]RCW 9.94A.030(23).

[12]*State v. Rivers*, 129 Wn.2d 697, 713, 921 P.2d 495 (1996). *See also Thorne*, 129 Wn.2d at 773-74 (crimes of robbery and kidnapping involve the threat of violence); *Manussier*, 129 Wn.2d at 677 (crimes of first and second degree robbery are potentially violent crimes against a person).

[13]RCW 9A.44.010(6).

immaterial.[14] Thus, no clear basis exists for distinguishing indecent liberties by forcible compulsion from other strike offenses.

The nature of the offense is also a factual question; proportionality standards apply "to a specific set of facts."[15] Morin's crime involves both threat and use of actual force, and a resulting injury. Thus, the nature of Morin's crime is a factor consistent with the constitutionality of the statute.

Second, we consider the legislative purpose behind the statute. The legislative history of the 1996 amendment is scant. A summary of House Bill 2320 notes only that "[a] concern exists that a person who commits certain violent sex offenses should qualify as a persistent offender after only two such offenses, instead of three."[16] It adds that the "three strikes" law is not supplanted.[17] Thus, the intent of the 1996 amendments to the POAA is simply an extension of the original purpose of the three strikes initiative "to provide a mandatory sentence based on the seriousness of the crime and a predetermined number of prior convictions for the most serious offenses."[18] Discussing persistent offender statutes generally, the *Thorne* court noted that the purpose of the POAA "includes deterrence of criminals who commit three 'most serious offenses' and the segregation of those criminals from the rest of society."[19] Morin's sentence is consistent with this purpose.

The third consideration is the punishment the defendant would have received in other jurisdictions. When it upheld the "three strikes" law, the Washington Supreme Court did not undertake an exhaustive analysis of laws in other

---

[14]RCW 9A.56.190; RCW 9A.56.210.

[15]*See Fain*, 94 Wn.2d at 396, 397-98 (habitual offender's life sentence constituted cruel punishment where crimes involved the use of fraud to obtain sums ranging from $2 to $40).

[16]HOUSE BILL REPORT, H.B. 2320, as reported by House Committee on Corrections (Jan. 1996).

[17]*Id.*

[18]*State v. Thorne*, 129 Wn.2d 736, 767, 921 P.2d 514 (1996).

[19]*Thorne*, 129 Wn.2d at 775.

jurisdictions, but simply stated that Washington's "three strikes" law is similar to state and federal legislation throughout much of the United States.[20]

The State contends that at least nine states have some type of "two strikes" law. In Georgia, for example, any person who has been previously convicted of a "serious violent felony," which includes aggravated sexual battery,[21] and commits a second serious violent felony, is sentenced to imprisonment for life without parole.[22] The Georgia Supreme Court upheld the law, finding that it did not violate the state or federal constitution on the basis of cruel and unusual punishment.[23] California has enacted a "one strike" law for defendants found guilty of committing sexual offenses under specified aggravating circumstances. California law also provides that persons convicted of a second offense, including rape by force, rape of a spouse by force, and penetration of genital or anal openings by foreign or unknown objects, shall be sentenced to life and shall not be eligible for parole for 25 years.[24] A California appellate court found that this provision did not violate the state or federal constitution.[25]

As the State illustrated, other jurisdictions continue to impose stringent sentences for sex offenders. Nevertheless, Washington's two strikes law as applied to the crime of indecent liberties by forcible compulsion may be one of the most stringent. Of the "two strike" laws analyzed by the State, almost all apply to aggravated sex offense crimes requiring both some degree of penetration and the inflic-

---

[20]*Rivers*, 129 Wn.2d at 714; *Thorne*, 129 Wn.2d at 775; *Manussier,* 129 Wn.2d at 678; *see also State v. Cruz*, 91 Wn. App. 389, 403, 959 P.2d 670 (1998).

[21]"Aggravated sexual battery" requires intentional penetration of the sexual organ or anus with a foreign object. GA. CODE ANN. § 16-6-22.2 (1999).

[22]GA. CODE ANN. § 17-10-7(b)(2) (1999).

[23]*Ortiz v. State*, 266 Ga. 752, 470 S.E.2d 874, 876 (1996).

[24]CAL. PENAL CODE § 667.61 (West 1998).

[25]*People v. Crooks*, 55 Cal. App. 4th 797, 64 Cal. Rptr. 2d 236 (1997) (mandatory sentence of 25 years to life under "first strike" sentencing law for rape during commission of first-degree burglary was not cruel and unusual punishment).

tion of serious bodily injury. In addition, while our court has held that the distinction between life sentences with and without parole is not significant,[26] only four of the other two strikes states impose sentences of life without parole; one imposes death. It is unclear what sentence Morin would receive in other jurisdictions, but it appears unlikely that an indecent liberties "second strike" would result in life without parole.

The fourth factor is the punishment imposed for other offenses in the same jurisdiction. The other sex offenses included in the two strikes law are first and second degree rape and first degree child molestation, all of which are class A offenses. First degree and second degree rape of a child were added to the list in 1997, and they are also class A offenses. Certain nonsex offense crimes are also included in the two strikes law: first and second degree murder, homicide by abuse, first and second degree kidnapping, first and second degree assault, and burglary in the first degree with a finding of sexual motivation. Only indecent liberties by forcible compulsion, second degree assault, and second degree kidnapping are class B offenses. But all of these offenses are either serious violent offenses, violent offenses, or most serious offenses.[27] Thus, based on classifications alone, the crime of indecent liberties by forcible compulsion cannot be meaningfully distinguished from the other crimes for which the two strikes law applies.

▇ Applying the four part test to this case, we conclude that Morin's sentence to life imprisonment without parole for the crime of indecent liberties by forcible compulsion does not violate Washington's constitutional prohibition against cruel punishment. The nature of his crime, the legislative purpose and the classification system for strike crimes, all support the conclusion we reach, as do the facts of this offense. Morin's "first strike" was a conviction for first degree rape, which is classified as a serious violent

[26]*Rivers*, 129 Wn.2d at 714.

[27]RCW 9.94A.030(23), (31), (38).

felony (along with murder in the first degree).[28] His second "strike" came because he climbed through the window of a retirement home, pulled down the pajamas of 95-year-old blind woman, touched her vaginal area, and placed his hand across her mouth to keep her quiet. We cannot say the punishment was grossly disproportionate to the offense committed in this case.[29]

We affirm. The remainder of this opinion has no precedential value and will be filed for the record pursuant to RCW 2.06.040.

COLEMAN and APPELWICK, JJ., concur.

Review denied at 142 Wn.2d 1010 (2000).

---

[28]RCW 9.94A.030(31).

[29]We note that given the range of possible conduct that may constitute indecent liberties by forcible compulsion, there may be circumstances which call for a different result. *See Thorne,* 129 Wn.2d at 773 n.11 ("Our examination of the Defendant's claim is not intended to resolve all article I, section 14 challenges to sentences imposed under the Persistent Offender Accountability Act. We recognize there may be cases in which application of the Act's sentencing provisions runs afoul of the constitutional prohibition against cruel punishment."). *See also* Governor Lowry's partial veto message regarding the 1996 amendment:

When we make our choices and draw the line on whom we will automatically send to prison for life, we seldom have problems with the top of the list—the most serious and reprehensible crimes—which cry out for harsh penalties. No one disagrees that the sexually motivated murder, the violent rapist, and even those who attempt such heinous crimes, deserve life-long exile from society. The difficulty arises when we try to decide where to end our list and distinguish those offenses that may not warrant life behind bars.

Substitute House Bill No. 2320 specifies that a second conviction of indecent liberties results in a mandatory life sentence. Under current law, an offender convicted of indecent liberties with one prior sex conviction normally faces a four to five year sentence. This overwhelming increase in punishment for this particular offense may very well be appropriate for each and every offender covered by this new law. I worry that, at least on occasion, it will not.

LAWS OF 1996, ch. 289, § 2, at 1540-41 (partial veto message, Mar. 30, 1996).