[No. 27169-9-II.   Division Two.   November 1, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. ANDREW M. FLORES, *Appellant*.

*Brian A. Walker*, for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney*, and *Kimberley Robert Farr, Deputy*, for respondent.

ARMSTRONG, J. — After Andrew Flores was convicted a second time of first degree child molestation, the court sentenced him to life imprisonment without the possibility of parole as required by Washington's Persistent Offender Accountability Act. Flores contends that this sentence is cruel and unusual punishment and that it violates his equal protection rights. He also claims that his counsel was ineffective for failing to interview important witnesses and failing to discredit the victim's story. Finally, Flores contends that a sentencing condition prohibiting him from all contact with minors was unreasonable. We find no reversible error and, therefore, affirm.

## FACTS

Sometime after Christmas 1999, Holly Noble learned that her live-in boyfriend, Andrew Flores, had earlier been convicted of a sex crime against children. After questioning her eight-year-old daughter, the victim in this case, Noble suspected that Flores had abused her. At trial, the victim testified that Flores had inappropriately touched her. The

victim's cousin Dreama, Detective Allais, and Dr. Stirling all testified that the victim told them that Flores had touched or rubbed her genital area.

After a bench trial, the trial court found Flores not guilty of two counts of first degree child rape. It said that the evidence of sexual intercourse "was very sketchy, was very vague, and not very persuasive." 3 Report of Proceedings (RP) at 235. But it found Flores guilty of two counts of first degree child molestation. The trial court commented that the victim's statements to her mother and grandmother were in response to leading questions and if the case depended upon these alone, it "would be a case of very arguable reasonable doubt." 3 RP at 236. But it found Dreama, to whom the victim also described the molestation, "extremely believable." 3 RP at 237. Thus, the verdict rested on

> [t]he fact that [the victim] made these statements which she doesn't like to make, that she cries when she has to make, that she resists having to discuss, [and] the fact that she would volunteer those to Dreama, a girl to whom there had never been any sexual discussions or conversation previously.

3 RP at 237.

Before sentencing, the court appointed new counsel for Flores because his trial counsel was incarcerated. Flores' new attorney moved for a new trial, claiming that former counsel was ineffective. At the hearing on the motion for new trial, the trial court allowed Flores to question Sherry Taylor, Dreama's stepgrandmother (with whom Dreama lived), to determine whether her testimony would have changed its verdict. Taylor said Dreama had a reputation in the community for telling stories, embellishing, and lying "lots." 7 RP at 22. In March or April 2001, Taylor had discussed Flores' convictions on the telephone in front of Dreama. Immediately afterwards, Dreama told Taylor that sometime before Christmas (before the family learned of Flores' prior conviction), the victim told her she had slept in the same bed with Flores and Flores had rubbed against

her. This corroborated the victim's claim that she told Dreama about the abuse first.

The trial court found that Dreama's and the victim's stories were consistent, that the victim told Dreama about the abuse before the family ever discussed Flores' prior conviction, that the reputation evidence about Dreama was "extremely weak" and had little or no probative value, and that the two young girls were not sophisticated enough to have "cooked up" a story that the victim had told Dreama of the abuse. 7 RP at 49, 53. Taylor's testimony impeaching Dreama did not raise a reasonable doubt about Flores' guilt, so the trial court denied Flores' motion for a new trial.

As Flores had a prior conviction for child molestation, Washington's Persistent Offender Accountability Act, former RCW 9.94A.120(4) (2000), required the trial court to sentence Flores to life imprisonment without the possibility of parole.

## ANALYSIS

### I. Washington's "Two Strikes" Law

Washington's Persistent Offender Accountability Act,[1] the "three strikes law," has been upheld under the state and federal constitutions. *State v. Morin*, 100 Wn. App. 25, 28, 995 P.2d 113, *review denied*, 142 Wn.2d 1010 (2000). In 1996, the legislature amended the law so that "two strikes" for some crimes made an offender "persistent" and, thus, covered by the statute. RCW 9.94A.030(32)(b). The amendment requires life imprisonment without the possibility of parole for a defendant's second conviction of certain listed sex offenses, including first degree child molestation. RCW 9.94A.030(32)(b), .570.

Flores contends that his life sentence without possibility of parole constitutes cruel and unusual punishment and violates his right to equal protection. Several courts have found the "two strikes" law constitutional as applied to

---

[1] Former RCW 9.94A.120(4) (2000).

certain crimes. *Morin*, 100 Wn. App. at 32-33 (indecent liberties by forcible compulsion); *State v. Gimarelli*, 105 Wn. App. 370, 382, 20 P.3d 430 (first degree child molestation), *review denied*, 144 Wn.2d 1014 (2001); *State v. Lawrence*, 108 Wn. App. 226, 31 P.3d 1198 (2001) (second degree rape), *review denied*, 145 Wn.2d 1037 (2002).

A. Cruel and Unusual Punishment

■ The federal constitution prohibits cruel and unusual punishment. U.S. CONST. amend. VIII. Washington's constitution prohibits "cruel punishment." WASH. CONST. art. I, § 14. Thus, if a sentence does not violate the state provision, it will not violate the federal provision. *Morin*, 100 Wn. App. at 29.

■ A sentence violates the Washington Constitution if it is grossly disproportionate to the crime for which it was imposed. *Morin*, 100 Wn. App. at 29. In determining whether a sentence is grossly disproportionate, *State v. Fain*, 94 Wn.2d 387, 397, 617 P.2d 720 (1980), directs us to consider: "(1) the nature of the offense; (2) the legislative purpose behind the habitual criminal statute; (3) the punishment defendant would have received in other jurisdictions for the same offense; and (4) the punishment meted out for other offenses in the same jurisdiction."

Under the first factor, we consider whether the crime is violent and whether it was committed against a person or property. *Gimarelli*, 105 Wn. App. at 381. Flores contends that his crime did not involve violence, "other than the inherent force and violence presumed in sex crimes." Appellant's Br. at 30. But child molestation is a most serious offense, RCW 9.94A.030(28), and is considered a sexually violent offense for purposes of the sexually violent predator act. RCW 71.09.020(15). It is committed against a person. Flores physically touched and rubbed the victim "more than twice." 2 RP at 54, 55. The victim testified that it felt "[n]ot good," that she was afraid she would get in trouble if she told, and that she cried when she eventually told her mother about the abuse. 2 RP at 56, 60, 61. Here, as in *Gimarelli* and *Morin*, this factor favors the sentence's

constitutionality. In *Gimarelli*, the defendant repeatedly touched the victim on her abdomen, over her protests; and in *Morin*, the defendant put his hands down the victim's pants and covered her mouth when she screamed. *Gimarelli*, 105 Wn. App. at 381; *Morin*, 100 Wn. App. at 27. Conversely, in *Fain*, where the court found the sentence unconstitutional, the defendant committed theft of about $400. *Fain*, 94 Wn.2d at 389.

■ Under the second factor, the legislature's purpose in enacting the two strikes amendment was to provide "mandatory sentences for repeat offenders to deter such crimes and [to] protect society." *Gimarelli*, 105 Wn. App. at 381. Flores' sentence is consistent with this purpose.

Under the third factor, although courts have noted that Washington's two strikes law is among the most stringent sentencing laws in the country, *Morin*, 100 Wn. App. at 32-33, several other states join Washington in imposing a life sentence on a person who has twice been convicted of sex offenses against children. GA. CODE ANN. § 17-10-7(b)(2) (1997) (second offense of aggravated child molestation leads to life sentence without parole); S.C. CODE ANN. § 17-25--45(A) (Law. Co-op. 1985 & Supp. 2001) (second offense of criminal sexual conduct with minor leads to life sentence without parole); N.M. STAT. ANN. § 31-18-25(B) (Lexis 2002) (second offense of violent sexual offense, when victim is under 13 years old, leads to life sentence without parole); MONT. CODE ANN. § 46-18-219(1)(a) (2001) (second offense of sexual abuse of children leads to life sentence). And this factor alone is not dispositive. *Gimarelli*, 105 Wn. App. at 381-82.

Under the fourth factor, first degree child molestation is a Class A felony and a most serious sex offense. RCW 9A.44.083(2), 9.94A.030(28); *Gimarelli*, 105 Wn. App. at 382. Flores points out that if he had murdered or severely beaten the victim, he would be facing a more lenient sentence. But in analyzing this factor in a three strikes case, the Supreme Court compared the sentence in question to the sentence imposed for other three strikes crimes. *State*

*v. Rivers*, 129 Wn.2d 697, 714, 921 P.2d 495 (1996). It noted that "all defendants who are convicted of a third 'most serious offense'" receive life sentences without parole. *Rivers*, 129 Wn.2d at 714. Similarly, courts must sentence all defendants who have prior similar convictions to life imprisonment without parole when they are convicted of the second listed sex offense. RCW 9.94A.030(32)(b), .570. Flores' sentence is comparable to the sentence he would have received for committing similar second offenses.

■ Based on these factors, Flores' sentence is not grossly disproportionate to his crime. He is a convicted child molester who has molested a child on at least two separate occasions. The sentence fulfills the legislature's intended purpose and does not violate Washington's prohibition of cruel punishment.

B. Equal Protection

Flores next contends that his life sentence without parole violates the Fourteenth Amendment's guarantee of his right to equal protection. U.S. CONST. amend. XIV. He argues that he is a member of a class of offenders who have committed "serious violent offenses," and he criticizes the disparity between his own sentence and that of someone who beats or kills a child, who may be eligible for parole. Appellant's Br. at 35-36.

■ The legislature has defined Flores as a member of a class of persistent offenders who have committed serious and violent sex offenses, often against children. RCW 9.94A.030(32)(b). The Supreme Court has consistently applied rational basis review to equal protection claims under the Persistent Offender Accountability Act. *State v. Thorne*, 129 Wn.2d 736, 771, 921 P.2d 514 (1996); *State v. Manussier*, 129 Wn.2d 652, 673-74, 921 P.2d 473 (1996). Under rational basis review, the law must rest on a legitimate state objective and must not be wholly irrelevant to achieving that objective. *Manussier*, 129 Wn.2d at 673. The legislature has broad discretion to decide what the public interest demands and what it needs to do to protect that interest. *Thorne*, 129 Wn.2d at 772. The challenging party

has the burden of showing that the law is "purely arbitrary." *Thorne*, 129 Wn.2d at 771.

The Supreme Court has found that the "three strikes" provision of the Persistent Offender Accountability Act does not violate equal protection. *Manussier*, 129 Wn.2d at 673-74; *Thorne*, 129 Wn.2d at 772. The purposes for the law are the same for two strikes and three strikes: protecting public safety, reducing the number of serious repeat offenders, providing proper and simplified sentencing, and restoring the public trust. RCW 9.94A.555(2); *Thorne*, 129 Wn.2d at 771-72. As the court has noted, classifying certain people as persistent offenders is reasonably related to these goals, and the legislature is justified in punishing repeat offenders more severely than first-time offenders. *Thorne*, 129 Wn.2d at 772. Likewise, the legislature is justified in punishing repeat child sex offenders more severely than other repeat offenders. Flores was not denied equal protection.

Accordingly, we affirm.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, A.C.J., and HOUGHTON, J., concur.

Review denied at 148 Wn.2d 1025 (2003).