IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32809-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| J.C.,[†] | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — This case requires this court to interpret and apply RCW 13.50.260(4)(a)(v), which concerns sealing juvenile records. That subsection prohibits sealing when a person's juvenile court record contains an adjudication for indecent liberties that was "actually committed" with forcible compulsion.

As a juvenile, J.C. pleaded guilty to an amended charge of indecent liberties by forcible compulsion. As an adult, he unsuccessfully moved to seal his juvenile conviction file. He contends the trial court erred because the evidence shows that he did not "actually" use forcible compulsion in committing indecent liberties.

---

[†] For purposes of this opinion, the minor's initials are used in place of his name.

We resolve two questions: (1) whether RCW 13.50.260(4)(a)(v) required the trial court to determine whether J.C. actually used forcible compulsion, and (2) whether it is appropriate for this court to render an ultimate decision at this juncture. We answer the first question yes, and the second question no. We, therefore, reverse the trial court's order, and remand for the trial court to conduct a hearing and enter findings of fact and conclusions of law.

## FACTS[1]

When J.C. was 13 years old he volunteered at a "Mothers of Preschool Children" (MOPS) program. While the mothers met in a separate part of the building, J.C. sat at a classroom table with M.B.C., a five-year-old girl, and W.A.B., a five-year-old boy, and exposed himself to both of them. He asked M.B.C. and W.A.B. to do the same. M.B.C. "'told him no because Mom said not to,'" but J.C. said, "'show me anyway.'" Clerk's Papers at 1. Both M.B.C. and W.A.B. then exposed themselves to J.C. He then asked W.A.B. to touch his penis, and W.A.B. complied. J.C. told M.B.C. and W.A.B. not to tell anyone what they had done. When later questioned by Detective Kevin Bechtold, J.C.

---

[1] These facts come from the police reports that supported the initial probable cause determination. In the statement of plea of guilty form, J.C. admitted to the facts in these reports.

2

admitted he had exposed himself to W.A.B. on two prior occasions, and had asked

W.A.B. to expose his penis once prior.

The State charged J.C. with child molestation in the first degree and indecent

exposure. A negotiated settlement resulted in the State amending the charge to indecent

liberties by forcible compulsion, and J.C. pleading guilty to the amended charge.[2] The

trial court ordered J.C. into the special sex offender disposition alternative (SSODA)

program. J.C. completed the SSODA program and all other court-imposed requirements.

The Juvenile Rehabilitation Administration released J.C. from supervision, and in 2012,

he no longer was required to register as a sex offender.

In August 2014, J.C. moved to seal his juvenile record under RCW 13.50.260(3).

Due to the legislature's reworking of chapter 13.50 RCW in 2011, juvenile records

containing sex offenses—including class A felony sex offenses—are *required* to be

sealed if six conditions are met.[3] The State agreed that J.C. met all conditions, except the

---

[2] In what is commonly referred to as a *Barr* plea, a person pleads guilty to a substituted charge and a trial court can accept the plea even though there is no factual basis for it, provided there is a factual basis for the original charge. *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 684 P.2d 712 (1984).

[3] The full statute provides:

(4)(a) *The court shall grant any motion to seal records* for class A offenses made pursuant to subsection (3) of this section if:

(i) Since the last date of release from confinement, including full-time residential treatment, if any, or entry of disposition, the person has

fifth: that he had "not been convicted of . . . indecent liberties that was actually committed with forcible compulsion." RCW 13.50.260(4)(a)(v). The trial court agreed with the State and denied J.C.'s motion to seal. This appeal followed.

## ANALYSIS

J.C. argues that the trial court erred in denying his motion to seal. He argues that the statutory provision in question required the trial court to determine whether he actually used forcible compulsion, and because he did not use forcible compulsion, his motion to seal should have been granted.

---

spent five consecutive years in the community without committing any offense or crime that subsequently results in an adjudication or conviction;

(ii) No proceeding is pending against the moving party seeking the conviction of a juvenile offense or a criminal offense;

(iii) No proceeding is pending seeking the formation of a diversion agreement with that person;

(iv) The person is no longer required to register as a sex offender under RCW 9A.44.130 or has been relieved of the duty to register under RCW 9A.44.143 if the person was convicted of a sex offense;

*(v) The person has not been convicted of* rape in the first degree, rape in the second degree, or *indecent liberties that was actually committed with forcible compulsion; and*

(vi) The person has paid the full amount of restitution owing to the individual victim named in the restitution order, excluding restitution owed to any insurance provider authorized under Title 48 RCW.

RCW 13.50.260 (emphasis added).

4

A.  *Whether RCW 13.50.260(4)(a)(v) requires the trial court to determine whether J.C. actually used forcible compulsion*

1.  Standard of review

The legal standard for sealing or unsealing records is a question of law reviewed de novo. *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 540, 114 P.3d 1182 (2005). RCW 13.50.260(3) permits a person who is the subject of a filed juvenile offender complaint and has not had his or her juvenile court record sealed to move the court to vacate its order and findings and seal the official juvenile court record, except as to certain persons and for certain purposes as set forth in RCW 13.50.050. In RCW 13.50.260(4)(a), the legislature removed trial court discretion and directed that trial courts "shall grant any motion to seal records for class A offenses made pursuant to subsection (3)" if six conditions are met. Because the legislature removed trial court discretion, the general abuse of discretion standard otherwise applicable to a trial court's granting or denying a motion to seal is not appropriate here.

2.  Statutory background

RCW 13.50.260 governs sealing juvenile criminal records.[4]  Washington has

---

[4] RCW 13.50.050 governed juvenile record sealing until June 2014. In June 2014, the sections of RCW 13.50.050 addressing sealing hearings and sealing juvenile offender records were recodified in a new section, RCW 13.50.260. *See* LAWS OF 2014, ch. 175, §§ 3-4.

historically provided a mechanism for juveniles convicted of sex offenses to have their records sealed. *See State v. Webster*, 69 Wn. App. 376, 378, 848 P.2d 1300 (1993) (holding trial court was obligated to seal juvenile's records once statutory requirements were met, even if juvenile was convicted of a sex offense). However, in July 1997, the legislature amended former RCW 13.50.050 and prohibited sealing juvenile records containing sex offenses. *See* LAWS OF 1997, ch. 338, § 40(11) ("The court shall grant the motion to seal records . . . if it finds that . . . (d) The person has not been convicted of a class A or sex offense.").

In 2011, the Washington State Senate introduced S.B. 5204, which proposed reinstating the right for ex-juvenile offenders to have certain juvenile sex offense records sealed. *See* S.B. 5204, 62d Leg., Reg. Sess. (Wash. 2011) (deleting the condition, "[t]he person has not been convicted of a sex offense" and replacing it with, "[t]he person is no longer required to register as a sex offender"). S.B. 5204, as it was originally introduced, included a list of five conditions for an ex-juvenile offender to meet before that person's juvenile record containing a sex offense could be sealed: (1) five consecutive years in the community without acquiring a new adjudication or conviction, (2) no pending juvenile or criminal offenses, (3) no pending diversionary agreements, (4) the person is no longer required to register as a sex offender, and (5) full restitution has been paid. *Id.*

6

After the original bill had been introduced, the Washington Association of
Prosecuting Attorneys (WAPA) lobbied the sponsors of the bill to categorically prohibit
sealing juvenile records containing adjudications for three crimes: first degree rape,
second degree rape, and forcible indecent liberties.[5] In response, the legislature drafted
RCW 13.50.260(4)(a)(v), inserted the new provision into the Substitute Senate Bill, and
included the provision in the enacted law.[6] *See* SUBSTITUTE S.B. 5204, at 14, 62d Leg.,

---

[5] WAPA's Tom McBride testified to the Senate Committee on Human Services
and Corrections:

> Here to request an amendment on this bill . . . the second thing we did in the
> sealing statute is we gave the court a specific list of factual findings and
> then you should seal the records. Well the problem is, Senator Hargrove, as
> you said, there's "sex offenders" and there's sex offenders, and there's three
> crimes that we don't think this is a sufficient amount of time to keep track
> of, and there's a public safety issue. And those are the crimes of rape in the
> first degree, rape in the second degree, and forcible indecent liberties. And
> the reason why, is these are as much crimes of violence as they are sex, and
> it's that intersection of violence and sex. These are crimes that we think are
> pretty serious, they need to be kept track of. Thankfully there's not very
> many of them. Most of the sex offenses in the juvenile system are going to
> be rape of a child or child molestation—they're not going to be these
> violent sexual crimes. So we'd ask you to exempt those three specific
> crimes, because we do think that there's a benefit to tracking those crimes.

Hr'g on S.B. 5204 Before the S. Comm. on Human Serv. & Corr., 62d Leg., Reg. Sess.
(Jan. 25, 2011), 1:30 p.m. (Wash. 2011), *available at*
http://www.tvw.org/index.php?option=com_tvwplayer&eventID=2011011176 (statement
of Tom McBride, Member, WAPA).

[6] Unfortunately, the body of legislative history for S.B. 5204 is devoid of any
indication why the legislature included the word, "*actually*." This is available at the
Washington State Legislature's Internet site for "bill information." *See* Bill Information,

Reg. Sess. (Wash. 2011); LAWS OF 2011, ch. 338, § 4(12)(a)(v).

>    3.    Legislative intent behind RCW 13.50.260(4)(a)(v)

The fundamental goal of statutory interpretation is to discern and implement the legislature's intent. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). When interpreting a statute, courts look first to the statute's plain meaning. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). "Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007). "If the statutory language is susceptible to more than one reasonable interpretation, then a court may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent." *Id.*

Washington courts have established principles of statutory construction. "'[E]ach word of a statute is to be accorded meaning.'" *State v. Roggenkamp*, 153 Wn.2d 614, 624, 106 P.3d 196 (2005) (quoting *State ex rel. Schillberg v. Barnett*, 79 Wn.2d 578, 584, 488 P.2d 255 (1971)). "'[T]he drafters of legislation . . . are presumed to have used no superfluous words,'" and courts must ascribe meaning to every word in a statute. *Id.* at

---

S.B. 5204–2011–12, http://apps.leg.wa.gov/billinfo/summary.aspx?bill=5204&year=2011

624-25 (alterations in original) (internal quotation marks omitted) (quoting *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 767, 10 P.3d 1034 (2000)) ("Isolating 'reckless' from the phrase 'in a reckless manner,' as petitioners advocate, would render the word 'manner' meaningless and superfluous."). Courts "may not delete language from an unambiguous statute: [s]tatutes must be interpreted and construed so that *all* the language used is given effect, with no portion rendered meaningless or superfluous." *J.P.*, 149 Wn.2d at 450 (emphasis added) (internal quotation marks omitted) (quoting *Davis v. Dep't of Licensing*, 137 Wn.2d 957, 963, 977 P.2d 554 (1999)). Finally, and importantly, "the legislature is deemed to intend a different meaning when it uses different terms." *Roggenkamp*, 153 Wn.2d at 625.

First, RCW 13.50.260(4)(a)(v)'s plain meaning is evidenced by the ordinary meaning of the language at issue: the word "actually." "Actually" is synonymous with "de facto, genuinely, really, truly, veritably." WEBSTER'S COLLEGIATE THESAURUS 12 (1988). Thus, by using the word "actually" in RCW 13.50.260(4)(a)(v), the legislature signaled its intent for the trial court to consider what "genuinely, really, truly" happened *in fact* when determining whether the underlying crime was committed with forcible compulsion.

---

(last visited September 18, 2015).

In addition to the ordinary meaning of the word "actually," the context of the statute, its related provisions, and the statutory scheme as a whole all support interpreting RCW 13.50.260(4)(a)(v) in a way that requires trial courts to look past the pleadings and consider the specific facts of the person's prior adjudication. In addition to RCW 13.50.260(4)(a)(v) and the indecent liberties provision itself (RCW 9A.44.100), the crime of "indecent liberties by forcible compulsion" appears 11 times in the Revised Code of Washington.[7] Every other statutory reference to this crime uses one of three

---

[7] *See* RCW 9A.28.020(3)(a) (grading an attempt to commit "indecent liberties by forcible compulsion" as a class A felony); RCW 9.41.010(3)(a) (defining "crime of violence" under the firearms and dangerous weapons statute, which includes "indecent liberties if committed by forcible compulsion"); former RCW 9.94A.030(37)(b)(i) (2012) (defining the criteria for "persistent offender" under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, which can include a conviction for, among other offenses, "indecent liberties by forcible compulsion"); former RCW 9.94A.030(54)(a)(v) (2012) (defining "violent offense" under the SRA, which includes "[i]ndecent liberties if committed by forcible compulsion"); RCW 9.94A.507(1)(a)(i) (providing a special sentencing scheme for persons convicted of a number of sex offenses, including "indecent liberties by forcible compulsion"); RCW 9.94A.515 (assigning "Indecent Liberties (with forcible compulsion)" a seriousness level X, and "Indecent Liberties (without forcible compulsion)" seriousness level VII); RCW 9.94A.737(5) (requiring that offenders who violate a condition of community custody by committing a new crime "shall be held in total confinement pending a sanction hearing" if the underlying offense is enumerated in the provision, which includes "[i]ndecent liberties with forcible compulsion, as defined in RCW 9A.44.100(1)(a)"); RCW 9.94A.837(1) (authorizing the prosecutor to file a special allegation "[i]n a prosecution for . . . indecent liberties by forcible compulsion" when the victim of the offense was under 15 years of age); RCW 9.94A.838(1) (authorizing the prosecutor to file a special allegation "[i]n a prosecution for . . . indecent liberties with forcible compulsion" when the victim had diminished capacity); RCW 13.40.210(3)(a)

10

syntactic permutations: "indecent liberties by forcible compulsion," "indecent liberties with forcible compulsion," or "indecent liberties if committed by forcible compulsion." These other statutes all have straightforward applications. The fact that a person was convicted of forcible indecent liberties operates to categorically qualify or disqualify that person in the pertinent statutory scheme, full stop—no individualized factual inquiry into the underlying conviction is needed. *See, e.g., State v. Morin*, 100 Wn. App. 25, 30, 995 P.2d 113 (2000) (conviction for indecent liberties by forcible compulsion was defendant's "second strike" and automatically qualified defendant as a "persistent offender."

If the legislature intended RCW 13.50.260(4)(a)(v) to work the same way as the 11 other "forcible indecent liberties" provisions in the Revised Code of Washington, it would have drafted RCW 13.50.260(4)(a)(v) with the same language: "[t]he person has not been convicted of rape in the first degree, rape in the second degree, or indecent liberties by forcible compulsion." However, because the legislature chose to add the word "actually," "we must recognize that a different meaning was intended." *Roggenkamp*, 153 Wn.2d at 626. To hold otherwise would render the word "actually" meaningless and superfluous, in contradiction to well-established principles of statutory

---

(increasing the length of parole to 24 months for juveniles "sentenced for . . . indecent liberties with forcible compulsion"); RCW 71.09.020(17) (defining "sexually violent offense" under the sexually violent predators statute, which includes "indecent liberties

11

construction.

Finally, the legislature's stated intent behind its 2014 chapter 13.50 RCW amendments supports interpreting RCW 13.50.260(4)(a)(v) in a way that resolves ambiguities in favor of the person seeking to have his or her juvenile record sealed:

> [I]t is the policy of the state of Washington that the interest in juvenile rehabilitation and reintegration constitutes compelling circumstances that outweigh the public interest in continued availability of juvenile court records.

LAWS OF 2014, ch. 175, § 1(2). The legislature designed the mechanism for sealing juvenile records specifically so juveniles can overcome prejudice and reintegrate into society. *Id.* at § 1(1). Because Washington's goal for its juvenile justice system is rehabilitation and reintegration rather than punishment, "[t]he legislature has always treated juvenile court records as distinctive and as deserving of more confidentiality than other types of records[,] and [Washington] court[s] ha[ve] always given effect to the legislature's judgment in the unique setting of juvenile court records." *State v. S.J.C.*, 183 Wn.2d 408, 417, 352 P.3d 749 (2015).

These goals, in tandem with the ordinary meaning of the word "actually," the context of the statute and its related provisions, the statutory scheme as a whole, and the legislature's stated intent behind the 2014 amendments to chapter 13.50 RCW, support

---

by forcible compulsion").

12

interpreting RCW 13.50.260(4)(a)(v) as requiring trial courts to inquire whether actual force was used in the commission of indecent liberties by forcible compulsion. Except in the instance of a *Barr* plea, the inquiry will be conclusively answered by the findings of fact if the case was tried or in the plea statement if disposition was by a plea.

B.  *Whether it is appropriate for this court to render an ultimate decision at this juncture or whether remand is appropriate*

J.C. requests that this court direct the trial court to enter an order sealing his juvenile conviction file. An appellate court does not make initial findings of fact and, where the trial court failed to enter sufficient findings, remand is the proper remedy. *State v. Barber*, 118 Wn.2d 335, 342, 823 P.2d 1068 (1992).

Because this court has clarified the meaning of RCW 13.50.260(4)(a)(v), we remand the case to the trial court to determine whether J.C. actually used forcible compulsion in light of this court's ruling. The parties may stipulate to the police reports being the facts for the trial court to apply to our ruling. If the parties do not so stipulate, the trial court should conduct an evidentiary hearing to resolve J.C.'s motion to seal. An evidentiary hearing is appropriate when there are questions of fact. *See Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); *State v. Crockett*, 118 Wn. App. 853, 857-58, 78 P.3d 658 (2003) (quoting former RCW

13

No. 32809-1-III
*State v. J.C.*

9.94A.530(2) (2002)); *State v. Zatkovich*, 113 Wn. App. 70, 75-76, 52 P.3d 36 (2002);

*State v. Card*, 48 Wn. App. 781, 786, 741 P.2d 65 (1987).

Reversed and remanded.

Lawrence-Berrey, J.

I CONCUR:

Fearing, J.

14

32809-1-III

KORSMO, J. (concurring) — I agree that this matter should be remanded for a new hearing on the petition to seal the record of the juvenile adjudication. However, I disagree with the majority's construction of the statute and suggest a different basis for reaching the same result. The legislature has categorically excluded indecent liberties by forcible compulsion from the juvenile sealing statute.

My disagreement starts with the word "actually." While clarity of intent would have been better served by using a different word, there is no significant issue presented in this circumstance by the novel word choice. As the majority notes, the legislature has varyingly described the crime of indecent liberties "by/with/if committed by" forcible compulsion. For some reason, the majority has no difficulty determining that all three of those iterations mean the same thing, but finds that the language used in the sealing statute ("actually committed with forcible compulsion") must mean something different. I disagree. If the use of different language means a different legislative intent, then all of those first three iterations must likewise mean something different. However, the majority correctly discerns that they mean the same thing. That should likewise be the case for indecent liberties "actually committed by" forcible compulsion. It is just another description for the one offense defined by the legislature.

Indecent liberties can be committed in six different manners, five of which are class B felonies. RCW 9A.44.100(1), (2)(a). Those five offenses all involve victim

vulnerability or a specified offender-victim relationship. RCW 9A.44.100(1)(b)-(f). The legislature has declared the crime of indecent liberties "by forcible compulsion" to be a class A felony. RCW 9A.44.100(1)(a); (2)(b). This is the one version of indecent liberties focused solely on the offender's conduct. The majority duly notes that the legislature has defined "forcible compulsion" in terms of "physical force" or threatened use of force. RCW 9A.44.010(6). As the majority's excellent exposition of the legislative history reveals, the legislature intended to exempt from the sealing statute the three necessarily violent sex offenses—first and second degree rape, and indecent liberties involving forcible compulsion. It did not intend for trial courts (or appellate courts) to attempt to reconstruct the factual basis for an old indecent liberties adjudication. The words "actually committed by" simply specified which of the six versions of indecent liberties the legislature intended not be subject to a sealing order. The phrase is not any different than the "if committed by" language used in the definitional statutes cited by the majority. RCW 9.41.010(3)(a) (defining "crime of violence"); RCW 9.94A.030(54)(a)(v) (defining "violent offense" for the Sentencing Reform Act of 1981). It simply described which alternative method of committing the crime was exempted from the sealing statute.

Accordingly, J.C.'s argument fails on the language of the sealing statute. It also fails under the definition of the crime of indent liberties "by" forcible compulsion. RCW 9A.44.100(1)(a). By definition, it simply is not legally or logically possible to commit

2

indent liberties by forcible compulsion without using forcible compulsion. *Id.*; RCW

9A.44.010(6). Thus, indecent liberties "actually committed by forcible compulsion" will

always exist whenever a youth has been adjudicated to have committed indecent liberties

by forcible compulsion. With the rare exception exemplified by this case, the majority

approach dooms trial judges to a pointless review of a record to confirm exactly what the

original trial court had to consider in the first instance—whether there was a factual basis

to find that the offender committed indecent liberties. It is essentially an untimely

collateral attack on the evidence supporting the original adjudication, even when, as here,

the offender eschews such a challenge. There is absolutely nothing in the history to

suggest that the legislature intended trial judges engage in this wild goose chase.[1]

Accordingly, I disagree with the majority's construction of the sealing statute. It is a

strained reading of otherwise clear language.

Nonetheless, I agree that, on these unusual facts, the matter should be remanded

for another hearing. I would get there by focusing on the nature of the guilty plea itself.

I agree with the majority that this case was treated as a *Barr* plea. *In re Pers. Restraint of

Barr*, 102 Wn.2d 265, 684 P.2d 712 (1984). There was a factual basis for the charged

greater offense of first degree child molestation, thus providing a fictional basis for

---

[1] This approach also effectively reverses the burden of proof in this motion. As a proponent of sealing, J.C. is required to establish that he acted without physical force, so he has no interest in setting forth any evidence contradicting that burden. The State would need to show use of physical force to defeat the motion.

3

accepting the plea to the somewhat[2] lesser offense of indecent liberties by forcible compulsion.

The legislature intended that the sealing statute would apply to juveniles who committed first degree child molestation. J.C. having committed this greater offense, rather than the fictional one to which he entered a guilty plea, I would allow the trial court to enter a sealing order because it was the legislature's intent that this fact pattern be subject to sealing. Thus, I would permit *Barr* pleas to be subject to sealing when the charged greater offense was subject to sealing.[3]

Since I believe a new hearing is appropriate, I concur in the majority's disposition of the case despite my disagreement with the majority's construction of the statute.

_____
Korsmo, J.

---

[2] First degree child molestation is classified as an A- felony under the Juvenile Justice Act of 1977, while indecent liberties by forcible compulsion is classified as a B+ felony. For someone with no previous adjudications, as in J.C.'s case, the difference had no sentencing consequences, although there would have been a difference in outcome if there had been prior offenses. *See* RCW 13.40.0357.

[3] I would permit this approach only when the *Barr* plea fiction was followed and would not allow sealing just because the record would have permitted the filing of a different charge subject to sealing. For example, an offender adjudicated to have committed first or second degree rape of a youthful victim would not be allowed to argue for sealing on the basis that the prosecutor could have instead charged first or second degree child rape, offenses for which sealing is possible.