[Nos. 27924-3-III; 27925-1-III.   Division Three.   June 15, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. FLOYD LEE WILLIAMS, *Appellant*.

484

486

*David L. Donnan, Nancy P. Collins,* and *Gregory C. Link* (of *Washington Appellate Project*), for appellant.

*Steven J. Tucker, Prosecuting Attorney,* and *Mark E. Lindsey* and *Andrew J. Metts III, Deputies,* for respondent.

¶1 SWEENEY, J. — This appeal follows a successful prosecution for two counts of first degree rape and one count of second degree assault with sexual motivation; the charges follow assaults on two separate victims. The defendant was sentenced to life imprisonment as a persistent offender based on these convictions and an earlier conviction for rape. The defendant claims on appeal that the assault should have merged with the rape since it was an element of the rape and had no independent purpose. We agree and reverse the conviction for second degree assault. But we reject his argument that the State was required to prove beyond a reasonable doubt and the jury was required to find the fact of an earlier conviction. And we, ultimately, affirm the judge's conclusion that the defendant was a persistent

offender based on the convictions here and the earlier conviction for rape. We then affirm the remaining convictions and the sentence.

## FACTS

¶2 On May 13, 2007, 14 months after he had been released from prison on a 1995 rape conviction, Floyd Williams ran into KW on a Spokane street and asked if she would like to share a beer with him. KW was wandering the streets rather than return to an abusive husband. She drank a beer with Mr. Williams and went with him to a downtown apartment to get crack cocaine. They left the apartment and went behind a building to smoke the cocaine. KW turned to leave. Mr. Williams grabbed her from behind and put his forearm across her neck. He pushed her to the ground and began strangling her. KW blacked out. When she regained consciousness, Mr. Williams was gone. Her pants, underwear, and shoes had been removed. A man discovered her crying in a parking lot, gave her a shirt, and called police. She later identified Mr. Williams in a photomontage as her attacker.

¶3 Four nights later, AM accompanied Mr. Williams to a downtown U-Haul business, where they entered a rental truck to sleep for the night. AM is a transient. She met Mr. Williams soon after he was released from custody in 2006. She considered him her best friend. She later testified that they never had a romantic or sexual relationship, but that he frequently helped her with transportation, laundry, and meals. That night they shared a beer and she fell asleep in the truck. She awoke being strangled by Mr. Williams. She was able to hold her breath for a few minutes. She wet her pants. And she began to believe that she was near death. Mr. Williams released some of the pressure from her neck so she could pull down her pants, then raped her, and strangled her to unconsciousness during the act. Afterward, he apologized and took her to get coffee and breakfast. Eventually he left her and she went to a hospital to report the rape.

¶4 The State charged Mr. Williams with one count of first degree rape of AM in June 2007. The State charged him with one count of second degree assault with sexual motivation and one count of first degree rape of KW in October 2007. The court granted the State's motion to consolidate the two cases. Mr. Williams objected. The court also granted the State's motion to admit the testimony of MS, the victim in the 1995 rape conviction.

¶5 The jury found Mr. Williams guilty of all charges. The court denied his motions for arrest of judgment or for a new trial.

## DISCUSSION

EVIDENCE OF PRIOR RAPE CONVICTION

¶6 Mr. Williams assigns error to the trial judge's decision to admit evidence of his prior conviction for rape. He argues that it showed only his general propensity for criminal conduct and because of that should have been excluded. ER 404(b); *State v. Halstien*, 122 Wn.2d 109, 126, 857 P.2d 270 (1993); *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986). He argues that the trial court failed to identify how the 1995 rape supported an element of the crime. He notes that prior bad acts evidence is not admissible simply because it proves a common scheme or plan unless that helps prove some essential element of the crime charged. *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). He also argues that the trial court failed to balance the probative value of this evidence against its potential prejudice. He argues that the court simply concluded that the facts were similar, and this is not enough. Finally, he argues that the failure of the court to instruct the jury on the limited purpose of the evidence permitted the jury to consider this as propensity evidence only.

¶7 MS testified that in May 1994 Mr. Williams offered her marijuana, grabbed her from behind by putting his forearm across her throat, and strangled her to unconsciousness four times while he raped her. The trial court

concluded that MS's testimony met the requisites for admission of prior bad acts. We review the trial court's interpretation of a rule of evidence de novo. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). But we review the court's discretionary decision to admit or exclude evidence for abuse of discretion. *Vy Thang*, 145 Wn.2d at 642; *State v. Scherner*, 153 Wn. App. 621, 656, 225 P.3d 248 (2009), *review granted*, 168 Wn.2d 1036 (2010).

■ ¶8 ER 404(b) prohibits evidence of other crimes to show that the defendant acted in conformity with that character—i.e., had a propensity to commit this crime. But evidence of prior crimes may be admitted for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). To admit evidence of prior convictions under ER 404(b), the court must (1) find by a preponderance of the evidence that the misconduct occurred; (2) identify, as a matter of law, the purpose of the evidence; (3) conclude that the evidence is relevant to prove an element of the crime charged; and, finally, (4) balance the probative value of the evidence against its prejudicial effect. *Vy Thang*, 145 Wn.2d at 642.

■ ¶9 The Washington Legislature enacted RCW 10.58-.090 effective June 12, 2008. Mr. Williams's case went to trial in October 2008, so the act applied to him. The statute authorizes the trial court to admit evidence of prior sex offenses in a criminal action in which the defendant is accused of a sex offense, notwithstanding ER 404(b). RCW 10.58.090(1). The statute requires that the trial court consider whether the evidence should be excluded under ER 403 based on the following considerations: (a) the similarity of the prior acts to the current charges, (b) the closeness in time of the prior acts, (c) the frequency of the prior acts, (d) the presence or lack of intervening circumstances, (e) the need for the prior acts testimony, (f) whether the prior acts resulted in a criminal conviction, and (g) whether the probative value is substantially outweighed by unfair prejudice or confusion of the jury. RCW 10.58.090(6).

¶10 Mr. Williams argued that RCW 10.58.090 is unconstitutional. The trial court declined to rule on the constitutionality of the statute.[1] Instead, the court employed a traditional ER 404(b) analysis to decide whether MS's testimony should be admitted. And so that will be the focus of our analysis here.

¶11 Mr. Williams does not dispute the trial court's finding that the second degree rape conviction is supported by sufficient evidence. He assigns error to the court's ruling that the evidence was relevant to prove an element of the charged crimes. He also contends the trial court failed to properly weigh the probative value of this evidence against the prejudicial effect.

¶12 The trial court concluded that the evidence was relevant and appropriate since Mr. Williams claimed that his current victims consented to sexual intercourse. Report of Proceedings (RP) at 57. We agree. The evidence was relevant to the element of forcible compulsion. *Id.*; RCW 9A.44.040; *see State v. Saltarelli*, 98 Wn.2d 358, 368, 655 P.2d 697 (1982) (evidence of prior attempted rape admitted to prove defendant used force and the victim did not consent). The court concluded that the 1995 rape conviction showed a common scheme involving similar victims (women of a similar age, involved with drugs) and a similar method of attack (promise of drugs, attacked from behind with a forearm across the throat, strangled into unconsciousness during the rape). The trial court also noted that the current rapes occurred within days of each other and only 14 months after Mr. Williams was released from prison for the 1995 rape conviction.

¶13 Finally, the trial court balanced the probative value of the evidence against its likelihood of prejudice. *Vy Thang*, 145 Wn.2d at 642. The court noted that two charges of rape

---

[1] Division One of this court in *Scherner*, 153 Wn. App. 621, upheld the constitutionality of RCW 10.58.090 against challenges that it violated the prohibition against ex post facto laws, the separation of powers doctrine, due process, and equal protection. *Scherner*, 153 Wn. App. at 632-48. A petition for review was granted on June 1, 2010.

against two separate victims were being tried together and that a level of prejudice attached. So the court concluded that any additional prejudice would be minimal. RP at 57.

¶14 Mr. Williams also assigns error to the court's failure to instruct the jury on the limited purpose of this evidence. The trial court is required to give the jury a limiting instruction if requested. *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007); *State v. Stein*, 140 Wn. App. 43, 70, 165 P.3d 16 (2007). Mr. Williams did not request a limiting instruction and therefore waived any right to assign error here. *Stein*, 140 Wn. App. at 70. Moreover, the prosecutor effectively gave the jury a limiting instruction during closing argument. The prosecutor cautioned the jury that evidence of prior convictions should not be used to decide that a defendant is a "bad seed," but may be considered only if the prior bad acts had such striking similarities that they showed a common scheme or plan. RP at 613. In this way, the State further reduced any taint from MS's testimony.

¶15 The trial judge's conclusion that the testimony of the prior rape was not unduly prejudicial is supported by this record. The trial court based its ruling on ER 404(b). But its findings easily support admission of the evidence under RCW 10.58.090 also. The court found that the prior bad acts were very similar to the acts charged, the current acts occurred only around a year after Mr. Williams was released from custody, and the prior conviction was necessary to help rebut the defense of consent. RP at 55-57. The trial judge did not abuse his discretion in admitting MS's testimony under either ER 404(b) or RCW 10.58.090.

DOUBLE JEOPARDY

¶16 Mr. Williams next contends that his convictions for both assault and rape violate constitutional prohibitions against double jeopardy because the assault, as proved, was used to effectuate the rape; it had no independent purpose. He argues that the fact that each statute at issue contains an element not found in the other is irrelevant because *Blockburger v. United States* requires " 'proof of an addi-

tional fact which the other does not.' " 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932) (quoting *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871)); *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983).

█ ¶17 Our review of this constitutional challenge is de novo. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

█ ¶18 The double jeopardy clauses of both the state and federal constitutions prohibit multiple punishments for the same offense. U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *In re Pers. Restraint of Borrero*, 161 Wn.2d 532, 536, 167 P.3d 1106 (2007). And we have well-established criteria in Washington for deciding whether the prohibition against double jeopardy has been violated. We first decide whether the legislature intended to authorize multiple punishments when a defendant's act supports charges under two criminal statutes. *Borrero*, 161 Wn.2d at 536; *Freeman*, 153 Wn.2d at 771. The legislature may specifically authorize cumulative punishments for crimes. For example, the legislature authorized separate convictions of burglary and any of the predicate felonies required to prove burglary. RCW 9A.52.050; *State v. Esparza*, 135 Wn. App. 54, 60, 143 P.3d 612 (2006). But legislative intent is rarely as clear on this question. So short of a specific declaration, we apply the so-called *Blockburger* test to determine whether multiple punishments are authorized. *Blockburger*, 284 U.S. at 304; *Borrero*, 161 Wn.2d at 536-37.

¶19 Simply put, we presume that the crimes are not the same offense for double jeopardy purposes if each crime has an element that the other does not. *Blockburger*, 284 U.S. at 304; *Freeman*, 153 Wn.2d at 772. The test is whether the crimes, as charged, each require proof of a fact that the other does not, not whether any hypothetical method of committing each crime may require proof of an additional fact. *Freeman*, 153 Wn.2d at 777. We also apply the so-called doctrine of merger, where the degree of one offense is raised by conduct that is defined as a crime elsewhere. Merger requires that we presume that the legislature

intended to punish both crimes with a single, greater sentence for the greater offense. *State v. Leming*, 133 Wn. App. 875, 890, 138 P.3d 1095 (2006).

¶20 Here, the State charged Mr. Williams with two crimes against KW: second degree assault with sexual motivation (RCW 9A.36.021(1)(a); RCW 9.94A.835) and first degree rape (RCW 9A.44.040(1)(c)). The court instructed the jury that the elements of second degree assault were assault and reckless infliction of substantial bodily harm. Clerk's Papers (CP) at 125; RCW 9A.36.021(1)(a). The court defined "substantial bodily harm" as "bodily injury that involves a temporary but substantial disfigurement, or that causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or that causes a fracture of any bodily part." CP at 126. It defined "recklessness" as an intentional act or an act that disregards a substantial risk that a wrongful act may occur. CP at 128. The specific elements charged for first degree rape were sexual intercourse by forcible compulsion and the infliction of serious physical injury, "including but not limited to physical injury which renders the victim unconscious." RCW 9A.44-.040(1)(c); CP at 131. And the court defined "forcible compulsion" as physical force that overcomes resistance or a threat that places a person in fear of death, physical injury, or kidnapping. CP at 134; RCW 9A.44.010(6).

¶21 Mr. Williams contends the charges of second degree assault and first degree rape merge because the assault (his strangling the victim) and the resulting substantial bodily harm provided the necessary element of serious physical injury required only for the first degree rape conviction. And he has a point:

> "[T]he merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (*e.g.*, first degree rape) the State must prove not only that a defendant committed that crime (*e.g.*, rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (*e.g.*, assault or kidnapping)."

*Freeman*, 153 Wn.2d at 777-78 (alteration in original) (quoting *Vladovic*, 99 Wn.2d at 420-21); *see also Leming*, 133 Wn. App. at 890.

¶22 The only assault here was the attack and strangulation of KW before and during the act of rape. The assault was used to effectuate the rape. The assault had no purpose or effect independent of the rape. *Freeman*, 153 Wn.2d at 778-79. And the State does not argue otherwise. The assault and the infliction of substantial bodily harm raised the rape to first degree. RCW 9A.44.040(1)(c). We conclude, then, that the second degree assault merged with the first degree rape conviction. *State v. Johnson*, 92 Wn.2d 671, 681, 600 P.2d 1249 (1979). We need not apply the *Blockburger* test since the two crimes merge. *Freeman*, 153 Wn.2d at 777. The remedy is well settled. We must vacate the conviction for second degree assault. *Johnson*, 92 Wn.2d at 682.

PERSISTENT OFFENDER

¶23 Significantly, for this appeal, the sentence, as a persistent offender, is not affected. A defendant convicted of a most serious offense who has been previously convicted of two most serious offenses is subject to a life sentence without the possibility of parole (a "three strikes" offender). Former RCW 9.94A.030(33)(a) (2006); RCW 9.94A.570. First degree rape is a most serious offense. Former RCW 9.94A.030(29)(a); RCW 9A.44.040(2). Mr. Williams was convicted of second degree rape in 1995 and second degree robbery in 1985 before he committed the current rapes. Both of these crimes are most serious offenses. Former RCW 9.94A.030(29)(a), (o); RCW 9A.44.050(2). The trial court cited these two prior crimes as the basis for sentencing Mr. Williams as a persistent offender under RCW 9.94A.570. CP at 168, 210. Mr. Williams would have also qualified as a persistent offender under the "two strikes" provision of former RCW 9.94A.030(33)(b) due to the prior conviction of second degree rape.

¶24 So, even without the conviction for second degree assault, Mr. Williams is subject to life without the possibility of parole.

¶25 In sum, the crime of second degree assault merged into the completed crime of first degree rape. Accordingly, the conviction for second degree assault should be vacated. *Johnson*, 92 Wn.2d at 684-85. Mr. Williams's sentence as a persistent offender, however, will not change.

EQUAL PROTECTION—CLASSIFICATION OF PRIOR CRIME

¶26 Mr. Williams next argues that the prior conviction is an essential element that must be proved as a matter of fact beyond a reasonable doubt because it changes the crime that the State may charge. *State v. Roswell*, 165 Wn.2d 186, 192, 196 P.3d 705 (2008) (because the recidivist fact elevated the offense from a misdemeanor to a felony, it altered the crime that could be charged). He argues that *Roswell* incorrectly distinguishes recidivist facts in other settings as "sentencing factors." *See Washington v. Recuenco*, 548 U.S. 212, 220, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (no reason to distinguish between an "element" of a felony offense and a "sentencing factor").

¶27 He notes that the use of a prior conviction to elevate a substantive crime from a misdemeanor to a felony is called an "element" to be proved to a jury beyond a reasonable doubt. *See Roswell*, 165 Wn.2d at 192. But he notes that the use of the same conviction to elevate a felony to an offense requiring a life sentence without parole is called an "aggravator" and need only be found by a judge by a preponderance of the evidence. Mr. Williams argues that there is no rational basis for this distinction—classifying the prior conviction for recidivist criminals as an "element" in certain circumstances and as an "aggravator" in others.

¶28 The equal protection clauses of the Fourteenth Amendment to the United States Constitution and of article I, section 12 of the Washington Constitution guarantee that persons similarly situated with respect to the legitimate purposes of the law must receive equal treatment. *State v. Thorne*, 129 Wn.2d 736, 770-71, 921 P.2d 514 (1996); *State v. Manussier*, 129 Wn.2d 652, 672, 921 P.2d 473 (1996). Equal protection claims are reviewed under one of three

standards based on the level of scrutiny required for the statutory classification: (1) strict scrutiny when a fundamental right is threatened, (2) intermediate or heightened scrutiny when important rights or semisuspect classifications are involved, and (3) rational basis scrutiny when none of the above rights or classes is threatened. *Manussier*, 129 Wn.2d at 672-73.

¶29 The recidivist offender here asserts a liberty interest, and so we need only decide whether the statutory classification has a rational basis. *Id.* at 673; *Thorne*, 129 Wn.2d at 771. The level of scrutiny we must bring to bear is modest. Mr. Williams must show that the statutory classification here rests on "grounds wholly irrelevant to the achievement of legitimate state objectives." *Thorne*, 129 Wn.2d at 771. He must show that the law is purely arbitrary. *Id.*; *State v. Flores*, 114 Wn. App. 218, 225-26, 56 P.3d 622 (2002).

¶30 Mr. Williams does not challenge the classification of persistent offenders under former RCW 9.94A-.030(33). He maintains instead that the standard of proof for prior crimes that classify persistent offenders should be the same as the standard of proof for prior crimes that elevate the level of a crime. He relies on *Roswell* for the proposition that when a prior conviction alters the crime that may be charged, the prior conviction is an essential element that must be proved beyond a reasonable doubt. 165 Wn.2d at 192. Again, Mr. Williams contends there is no rational basis for classifying a prior crime as an element to be proved beyond a reasonable doubt in some circumstances and as an "aggravator" to be proved with a preponderance of the evidence in other circumstances.

¶31 In *Roswell*, the defendant was charged with several sex offenses, including communication with a minor for immoral purposes. Usually communication with a minor for immoral purposes is a gross misdemeanor. But the defendant was guilty of a class C felony because he had been previously convicted of a felony sex offense. *Id.* at 190 (citing RCW 9.68A.090(2)). The previous offense was an

element that had to be proved to the jury beyond a reasonable doubt because the previous felony sex offense elevated the crime. *Id.* at 192. *Roswell* distinguishes a prior conviction that serves as an aggravating factor—elevating the maximum punishment—from a prior conviction that serves as an essential element of a crime. *Id.*

¶32 Mr. Williams argues that the distinction drawn in *Roswell* is, as a matter of constitutional law, flawed. But we find a long history of similar distinctions for prior convictions. *See, e.g., id.* at 193 (other than *the fact of a prior conviction*, a fact that increases the penalty of a crime beyond the statutory maximum must be proved to a jury beyond a reasonable doubt (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000))).

¶33 The Washington Supreme Court has rejected equal protection arguments under the Persistent Offender Accountability Act (RCW 9.94A.555) that would require the State to submit a defendant's prior convictions to a jury and to prove them beyond a reasonable doubt. *State v. Thiefault*, 160 Wn.2d 409, 418, 158 P.3d 580 (2007). The purposes of the Persistent Offender Accountability Act are the same for two-strike and three-strike offenders: to protect public safety by putting the most dangerous criminals in prison, to reduce the number of serious repeat offenders, to provide simplified sentencing, and to restore the public trust in the criminal justice system. RCW 9.94A.555(2); *Flores*, 114 Wn. App. at 226 (citing *Thorne*, 129 Wn.2d at 771-72). As noted in *Thorne*, a "state is justified in punishing a recidivist more severely than it punishes a first offender." 129 Wn.2d at 772.

¶34 We conclude then that proof of his prior convictions by a preponderance of the evidence is not entirely irrelevant to the purposes of the persistent offender statutes. His sentence is rationally related to the purposes of the Persistent Offender Accountability Act and is not, then, a violation of equal protection.

STATEMENT OF ADDITIONAL GROUNDS

¶35 Pro se, Mr. Williams makes a number of other arguments, which we take up now.

*Sufficiency of the Evidence*

¶36 Mr. Williams challenges the sufficiency of the evidence to support his convictions. Evidence is sufficient if, when viewed in the light most favorable to the prosecution, it allows any juror to find the essential elements of the crimes. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). "Circumstantial evidence and direct evidence are equally reliable." *Id.* We defer to the jury on issues of conflicting testimony and the credibility of the witnesses. *Id.* at 874-75.

¶37 Again, the elements of first degree rape are sexual intercourse by forcible compulsion and the infliction of serious physical injury. RCW 9A.44.040(1)(c). "Forcible compulsion" is physical force that overcomes resistance or a threat that places a person in fear of death, physical injury, or kidnapping. RCW 9A.44.010(6). The elements of second degree assault include assault and reckless infliction of substantial bodily harm. RCW 9A.36.021(1)(a).

¶38 Mr. Williams contends the State failed to prove either sexual intercourse or assault. Specifically, he contends (1) the State failed to run DNA (deoxyribonucleic acid) tests of blood or hair found on KW and AM and in the areas of their attacks, (2) medical examinations of KW and AM did not show vaginal trauma or enough scrapes and bruises to indicate a violent struggle, (3) cell phone records showed that KW lied about the number of times she made calls from Mr. Williams's telephone, (4) the jury was not allowed to know that KW had left home due to a fight with her husband, (5) the forensic scientists who conducted the DNA profiling have a history of committing errors, and (6) detectives never found the U-Haul truck that was reportedly the site of AM's rape.

¶39 The problem with these claims is that Mr. Williams's defense at trial was that he had sexual intercourse with KW and AM *with their consent*. So, of course, his claims now that the forensic scientists were wrong and that additional DNA evidence would have proved that he did not have sexual intercourse are both inconsistent and incompatible with that defense. And the jury heard testimony of the number of times KW called her husband and the fact that she was on the streets because she was afraid of him.

¶40 The evidence, in the light most favorable to the State, showed that Mr. Williams attacked and strangled KW and AM while raping them. They each showed the signs of that assault—swollen, red throats and hemorrhages in one eye after the attacks. And they identified Mr. Williams as their attacker. The jury found the testimony of the victims credible and the evidence persuasive. We will defer to the jury on these questions. *Thomas*, 150 Wn.2d at 874-75.

### *Trial as Framed Was Unfairly Prejudicial*

¶41 Mr. Williams next argues that joinder of the two cases and admission of the 1995 rape were unduly prejudicial, especially since the 1995 case was based on circumstantial evidence. He also claims the jurors ignored the inconsistencies in the evidence. And members of the jury had been victims of violence or had family members who had been victims of violence.

¶42 Under CrR 4.3(a), the trial court may join offenses in one trial if the offenses (1) are the same or similar in character or (2) are based on the same conduct or on a series of acts that are part of a single scheme or plan. Conversely, the trial court may sever joined offenses if doing so will promote a fair trial. CrR 4.4(b). A defendant who seeks to sever offenses has the burden of showing that joinder is so prejudicial that it outweighs the need for judicial economy. *State v. Bythrow*, 114 Wn.2d 713, 718, 790 P.2d 154 (1990).

¶43 Joinder may result in prejudice. So the court must consider a number of factors: (1) the strength of

the evidence on each count, (2) the clarity of the defenses on each count, (3) the court's instructions on considering each count separately, and (4) the cross admissibility of the evidence of each count. *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994). Offenses properly joined under CrR 4.3 are consolidated for trial unless the court severs them under CrR 4.4. CrR 4.3.1. The standard for our review is abuse of discretion. *Russell*, 125 Wn.2d at 63.

¶44 Here, the trial court found that consolidation of the cases was appropriate under CrR 4.3, CrR 4.3.1, and CrR 4.4 because "[e]vidence from each case would be cross admissible in separate trials." CP at 47. The trial court did not consider on the record the other predictors of prejudice set out in *Russell*. We conclude nonetheless that the omission is harmless. The evidence on each count was substantial, Mr. Williams's defense of consent was the same for each victim, and the trial court instructed the jury that it must consider each count separately. CP at 118; *State v. Johnson*, 124 Wn.2d 57, 77, 873 P.2d 514 (1994) (jurors are presumed to follow the trial court's limiting instructions). Mr. Williams fails to show that the trial court abused its discretion in joining the charges and refusing to sever the cases.

¶45 Mr. Williams next contends admission of the 1995 rape was unduly prejudicial because that conviction was based on circumstantial evidence. Any challenge to the evidentiary basis for the 1995 conviction is barred as untimely. *See* RAP 5.2(a). He also complains that the jury ignored inconsistencies in the witnesses' testimony, such as KW's misstatement of the number of times she used his cell phone. But it is the jury's job to weigh the evidence and to determine the credibility of the witnesses. *Thomas*, 150 Wn.2d at 874-75.

¶46 Finally, Mr. Williams contends the jury was biased because some jurors or their families had been victims of violence. But he cites nothing in the record to support this. Allegations alone are not enough. *See State v. Wilson*, 141 Wn. App. 597, 605-06, 171 P.3d 501 (2007).

¶47 We then vacate the conviction of second degree assault. Remand is not necessary, however, because Mr. Williams remains a persistent offender. Former RCW 9.94A.030(33); RCW 9.94A.570.

KULIK, C.J., and BROWN, J., concur.

Review denied at 170 Wn.2d 1011 (2010).